Crawfordsville, etc., Brick Co. *v.* Starbuck—80 Ind. App. 649.

and positive averment as to the use by appellant of said words is controlling. This appellant, under the averments of his complaint, has no more right to the exclusive use of the words "sport shop" than has the owner of a "gun shop" to the exclusive use of such words. Words which are descriptive of a business, or of a class of goods sold, are not subject to exclusive appropriation by any one proprietor. *Bolander* v. *Peterson* (1891), 136 Ill. 215, 26 N. E. 603, 11 L. R. A. 350; 38 Cyc pp. 824-825.

Judgment affirmed.

---

CRAWFORDSVILLE SHALE BRICK COMPANY *v.* STARBUCK ET AL.

[No. 11,696. Filed October 4, 1923. Rehearing denied January 9, 1924.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Employer.—Statute.*—Where an equipment company contracted with a brick manufacturing company to install certain machinery in its plant, and agreed to furnish an engineer to supervise construction and installation, the brick company to pay him a stipulated amount for his services, the brick company was an employer within the meaning of the Workmen's Compensation Act, (Acts 1915 p. 392, as amended Acts 1919 p. 158, §8020h3 Burns' Sup. 1921.)    p. 651.

2. MASTER AND SERVANT.— *Workmen's Compensation Act.— Negligence Cases not Controlling.*—Decisions in negligence cases are not necessarily controlling in compensation cases, where the liability of the employer arises, not from any wrong done by him, but from the statute which imposes such liability on persons bearing toward each other the relation of master and servant as defined in the statute.    p. 653.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.— Employer and Employe.—When Relation Exists.*—The mode of payment, while not decisive as to whether the relation of employer and employe exists, is a circumstance to be considered.    p. 655.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.—Employer and Employe.—When Relation Exists.*—In a proceeding under the Workmen's Compensation Act to recover compensa-

650     APPELLATE COURT OF INDIANA,

Crawfordsville, etc., Brick Co. v. Starbuck—80 Ind. App. 649.

tion for the death of an engineer who was supervising the construction and installation by an equipment company of certain machinery in a brick manufacturing plant, evidence *held* sufficient to sustain a finding that the relation of employer and employe existed between the engineer and the brick company. p. 655.

From the Industrial Board of Indiana.

Proceeding for compensation under the Workmen's Compensation Act by Mary O. Starbuck and another against the Crawfordsville Shale Brick Company. From an award for claimants, the defendant appeals. *Affirmed.*

*Joseph W. Hutchinson,* for appellant.

*Frank B. Ross, Rochford, Wall & Rochford* and *James D. Ermston,* for appellees.

McMahan, C. J.—The Manufacturers' Equipment Company of Dayton, Ohio, entered into a written agreement whereby it agreed to furnish certain materials, detailed plans and the necessary engineering service for the installation of a gas-burning system for appellant's plant at Crawfordsville. Said agreement, in addition to the provision that the equipment company was to furnish "the necessary engineering service," provided as follows: "It is understood and agreed that we (the equipment company) are to furnish the services of an experienced man during the necessary period of time to supervise construction and installation, * * * and for such services you are to pay transportation expenses, board, lodging, and a salary of ten dollars per day from the time of leaving Dayton, Ohio, until his return to that point, and while so engaged in the work." Appellant was also to furnish sufficient and competent help in the prosecution of the work of installing such plant. The equipment company made arrangements with John M. Starbuck, an experienced engineer of Indianapolis to supervise the installation of said plant.

NOVEMBER TERM, 1923        651

Crawfordsville, etc., Brick Co. *v.* Starbuck—80 Ind. App. 649.

During the installation of said system by appellant and while he was supervising such installation, Starbuck was killed by being struck by a motor car owned and operated by the Standard Brick Company. Starbuck had supervised the installation of a number of plants where the materials and machinery had been sold by the equipment company. Appellant paid Starbuck $10 a day for supervising the work. There is no evidence that he had ever been an employe of the equipment company or had ever been paid anything by that company for any work performed in the installation of any plant.

The Industrial Board found that Starbuck was an employe of appellant and that he was killed by reason of an injury received by him in the course of and arising out of his employment and awarded appellees compensation as dependents.

From this award, appellant appeals and insists that Starbuck was not an employe of appellant. Appellant proceeds upon the theory and assumption that

1. Starbuck was an employe of the equipment company; that the price for his services was fixed in a contract between appellant and the equipment company and that there was never any contract, express or implied, between appellant and Starbuck.

*Dallas Mfg. Co.* v. *Townes* (1906), 148 Ala. 146, 988, cited by appellant was a common-law action by appellee to recover damages for an injury received by appellee as an employe of appellant. A third party had entered into a contract with appellant to furnish the men to install and start the machinery, and was engaged in that work when appellant employed appellee as a helper to aid the contractor in installing such machinery. The manufacturing company paid Townes for his work and charged the same against the company selling and installing the machinery. Townes was not a regular employe of the appellant and was working under an inde-

pendent contractor, and was not in any way subject to the orders or direction of the appellant. In holding that Townes was not an employe of the appellant, the court said: "Where certain work is let to an independent contractor, who works according to his own methods and not under the direction of the master, those who work under said independent contractor are his servants, and not the servants or employes of the master. And this principle applies even to one who is the general servant of the master, but for that particular work becomes the servant of the contractor."

In *Claremont Country Club* v. *Industrial Acc. Com.* (1917), 174 Cal. 395, 163 Pac. 209, L. R. A. 1918F 177, a boy while caddying for a member of the club received an injury for which compensation was awarded against the club. The facts in that case showed that the club provided caddies for club members desiring them. The club maintained a caddy house where the caddies were stationed until their services were needed. These caddies were under the control of a paid employe of the club known as the "caddy master." When a club member desired the services of a caddy, he was not permitted to select the caddy he desired. He made his application to the caddy master, who, under a system, summoned the caddy whose turn it was to serve. The caddies were paid by the game. The player at the end of the game reported to the caddy master, with remarks concerning the services and qualifications of the caddy, and, at the same time, handing to the caddy master the amount earned by the caddy, which amount was immediately handed to the caddy by the caddy master. Caddies were taken on by the club through a committee or the caddy master, who was also empowered to discharge the caddy or to forbid him from frequenting the golf links. The club, on an appeal from the award, contended that the caddy when injured was an employe of

NOVEMBER TERM, 1923.    653

Crawfordsville, etc., Brick Co. v. Starbuck—80 Ind. App. 649.

the club member and not of the club. The court held otherwise. The bare statement of the facts is sufficient to show that the above case is not of controlling influence in the instant case.

*Wolfe* v. *Mosler Safe Co.* (1910), 124 N. Y. Supp. 541, 139 App. Div. 848, was an action for personal injuries, where Wolfe, an employe of a bank had, with its consent, been loaned to the safe company to perform certain work for the latter, and it was held that while Wolfe was doing the work for the safe company, the latter was the employer and was liable for an injury caused by its negligence.

But decisions in negligence cases are not necessarily controlling in compensation cases, where the liability of the employer arises, not from any wrong done

2. by him, but from the statute which imposes such liability upon persons bearing toward each other the relation of employer and employe as defined in the statute. *Kirkpatrick* v. *Industrial Acc. Com.* (1916), 31 Cal. App. 668, 161 Pac. 274; *Rongo* v. *R. Waddington & Sons* (1915), 87 N. J. Law 395, 94 Atl. 408; *Mc- Dowell* v. *Duer* (1922), 78 Ind. App. 440, 133 N. E. 839.

The instant case is not an action at common-law between a master and servant where the liability of the master depends on the question of negligence. It is a case where the liability is fixed by a statute which undertakes by the implied consent of the parties to create a contract on the part of the employer to compensate the employe for injury or death arising out of and in the course of the employment. And as was said by the court in the case last cited: "We must therefore look to the statute to ascertain who is intended by the word 'employer', and who by the word 'employe'. Manifestly the two terms are complementary and the meaning of either is ascertainable, at least in part, from that of the other."

Section 76 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921) provides that "employer" shall include any individual, firm, association, corporation, etc., using the services of another for pay, and that "employe" shall include every person, including a minor, lawfully in the services of another under any contract of hire or apprenticeship, written or implied, except one whose employment is both casual and not in the usual course of the trade, business, occupation or profession of the employer. Appellant was using the services of Starbuck for pay, and comes within the statutory definition of an employer, and we hold the facts in this case sufficient to justify the board in finding that Starbuck was in the service of appellant under an implied contract of hire.

This is not a case where appellant let a contract to the equipment company to do a particular work, and where appellant reserved no control over the manner in which the work should be performed, except that it should conform to a particular standard and where an injured employe of the contractor is prosecuting a common-law action for damages. Cases of that character are not of controlling influence. Appellant, as owner, was required to, and, as a matter of fact, was installing the gas machine in a building then in the course of construction. It had sole power and authority to employ and discharge the necessary laborers for that purpose. The manner and means of doing that work were under its control and it cannot be said, as a matter of law, that the authority of the equipment company was anything more than a privilege of selecting some person to supervise as to the result of the work and to assist appellant in the installation of the system. The reservation would not make it the employer of the men doing the work. *Naylor* v. *Holland, etc., Sugar Co.*

NOVEMBER TERM, 1923.    655

Crawfordsville, etc., Brick Co. *v.* Starbuck—80 Ind. App. 649.

(1921), 75 Ind. App. 132, 130 N. E. 152; *In re Duncan* (1920), 73 Ind. App. 270, 127 N. E. 289.

While the mode of payment is not decisive, as to whether the relation of employer and employe exists, it is a circumstance to be considered. *Indiana Iron* 3, 4. *Co.* v. *Cray* (1897), 19 Ind. App. 565, 48 N. E. 803. As heretofore stated, Starbuck was not a regular employe of the equipment company. He had been recommended by the equipment company to other purchasers of their gas machines, as a competent and reliable person to supervise the installation of such machinery and had supervised the installation of a number of such machines before he undertook the work in appellant's plant. When appellant had progressed in the construction of its plant to the point where it was ready to install the machinery purchased from the equipment company, it notified the latter company of that fact. The equipment company then communicated with Mr. Starbuck, who visited appellant and made arrangements as to the time when he should begin work. Mr. Starbuck, at that time, was employed by a contractor in Indianapolis to superintend the construction of a large residence in that city, and, in order that he might finish his work as such superintendent, appellant postponed the installation of the machinery in its building a week. According to the agreement between appellant and the equipment company, appellant was to pay the equipment company. $7,595.50, as follows: $472.50 on delivery of plans and specifications; $2,000 on shipment of the iron work and equipment; the balance in three payments due 60, 120 and 180 days from shipment. This agreement was in writing and provided that for the services of the supervisor, appellant was to pay his transportation expenses, board, lodging and a salary of $10 per day, and to furnish sufficient and

competent help in the prosecution of all the work incident to the installation of the system.   Mr. Starbuck had been working at appellant's plant about a month before his death.   He not only worked in a supervisory capacity, but he worked along with the other men who were engaged in the installation of the system.   G. B. Luckett, who was the secretary and treasurer of appellant was a witness, and, as such, testified in part as follows:   "We are paying him $10 a day and his board and lodging, and the understanding of our contract was that we were also to pay the traveling expenses." A few days after the accident, Mr. Luckett, as secretary of appellant, wrote a letter to Mrs. Starbuck, relative to Mr. Starbuck and said:   "He was doing his work here for us in an acceptable manner and had the friendship of all the men with whom he was working.   *   *   * At the time of the accident, there was a small balance due him on account of the time he had put in, and I am enclosing herewith our check for $40, which covers the amount due."

The evidence is sufficient to sustain the action of the board in finding that the relation of employer and employe existed between appellant and Mr. Starbuck.

The award is therefore affirmed.