JULIA GREEN BERRIER and EDWIN C. BERRIER v. ASSOCIATED INDEMNITY COMPANY, the Carrier, and BERRIER'S ICE CREAM COMPANY, THE EMPLOYER.

196 So. 188
Division B
Opinion Filed November 21, 1939
On Rehearing En Banc, May 28, 1940

352

*Montague Rosenberg,* for Appellants;

*George A. Pierce* and *William M. Cease, Jr.,* for Appellees.

BROWN, J.—This is an appeal from a final judgment of the Circuit Court affirming an award of the Florida Industrial Commission made on November 22, 1937.

· The claim was filed by Julia Green Berrier and Edwin C. Berrier, widow and son of Floyd L. Berrier, who met his death on June 4, 1937, in the State of Virginia, while engaged in work for the Berrier Brothers Ice Cream Corporation, a Virginia corporation. He was accidentally electrocuted when testing the switchboard which was being installed for said corporation.

A claim was filed in Florida under our compensation statute against Berrier's Ice Cream Company, a Florida corporation, whose plant was located in Duval County, Florida, and one in Virginia against the Virginia corporation under their statute. The facts of the case are very fairly stated in the award rendered by the Florida Industrial Commission in which it was said:

"Floyd L. Berrier, deceased, during his lifetime was secretary of Berrier's Ice Cream Company, a Florida Corporation, and owned Fifty (50%) per cent of the stock of the corporation. The corporation was a family affair, as was Berrier Bros. Ice Cream Corporation, a Virginia Corporation.

"The officers of the Florida Corporation were:

"J. R. Berrier—President and Treasurer.

"F. M. Berrier—Vice President.

"F. L. Berrier—Secretary.

"The officers of the Virginia Corporation were:

"W. C. Berrier—President and Treasurer.

"J. B. Berrier—Vice President.

"J. R. Berrier—Secretary.

"The fact that the corporations were closed corporations controlled by the Berrier family is immaterial, as for all purposes the corporations are separate and distinct legal entities.

"That Floyd L. Berrier, deceased, was an employee of the Florida Corporation prior to January 5, 1937, there is no doubt.

"On or about January 5, 1937, the said Floyd L. Berrier, hereinafter referred to as decedent, went to Richmond, Virginia, for the purpose of assisting in the installation of new equipment in the plant of the Virginia Corporation. The arrangements were made for decedent to go to Virginia by and between J. R. Berrier and the decedent. J. R. Berrier was President of the Florida Corporation and Secretary of the Virginia Corporation.

"The arrangement was, according to J. R. Berrier, made when he offered decedent the job if he wanted it, and the decedent accepted and consented to go.

"Decedent's salary from the Florida Corporation was

Three Hundred ($300.00) Dollars per month of which sum the Corporation was retaining Two Hundred ($200.00) Dollars per month by agreement, and crediting said amount to decedent's indebtedness to the Corporation, paying to the decedent the balance of One Hundred ($100.00) Dollars each month.

"Decedent was permitted to draw certain sums of money not to exceed Three Hunderd ($300.00) Dollars per month from the Virginia Corporation, of which J. R. Berrier had requested the Virginia Corporation to notify the Florida Corporation so that the sums so drawn by decedeent could be charged against his salary from the Florida Corporation. At the time of decedent's death the sums drawn by decedent from the Virginia Corporation had not in fact been charged against his salary from the Florida Corporation.

"The evidence establishes that while W. C. Berrier was President and Treasurer of the Virginia Corporation, J. R. Berrier was in fact the 'boss,' owned the controlling interest, and was always consulted regarding the business and policies of the Virginia Corporation.

"The decedent owned ten (10) shares of stock in the Virginia Corporation of the par value of One Hundred Dollars ($100.00) per share.

"The questions to be decided by the Commission are: (1) Was the decedent at the time of his death an employee of Berrier's Ice Cream Company, a Florida Corporation, so as to entitle his dependents to receive compensation under the Florida Workmen's Compensation Act, and (2) was his widow, Mrs. Julia Green Berrier, a dependent of decedent at the time of his death so as to be entitled to compensation on account of the death of her late husband.

"Dealing with the questions in the order mentioned, the Commission finds that the decedent, Floyd L. Berrier, was at

the time of his death a loaned employee to a corporation beyond the territorial limits of the State of Florida, over which this Commission has no jurisdiction, and not an employee of Berrier's Ice Cream Company, a Florida Corporation, so as to entitle his dependents to compensation under the Florida Workmen's Compensation Act.

"It is a well established principle of law that an employee who is lent to a special employer with the consent of the employee becomes an employee of the special employer for the purpose of Workmen's Compensation when the facts establish the special employment.

"In determining that the decedent was an employee of the special employer at the time of his death, the Commission has considered among other things, and principally, the question of which employer—as between the general employer and special employer—had the right to direct and control the decedent in the work which he was doing at the time of his death.

"It appears from the evidence that J. R. Berrier did have and exercise certain direction and control over decedent, but it is unreasonable to believe that the direction and control was by reason of his being President of the Florida Corporation; beyond the point of lending the decedent to the Virginia Corporation, for whose benefit the work was being done, J. R. Berrier was doing so as an officer of the Virginia Corporation.

"There was no legal connection between the corporation, and it does not appear from the record that the Florida Corporation had any right of control or direction over the particular matter in hand at the time of decedent's death, but to the contrary the work was being done for the benefit of the Virginia Corporation; it was the work and undertaking of the Virginia Corporation in which decedent was engaged at the time of his death; the employee expressly

consented to do the work for the Virginia Corporation and the Virginia Corporation had the right to control the details of the work in which decedent was engaged at the time of his death.

"The Florida Corporation was not in the business of installing machinery in other plants by contract or otherwise. Had it been, we might have a different situation. It was simply a matter of lending an employee to another corporation as special employer to which the special employer subscribed, and the labors of the employee were in furtherance of the interests of the special employer.

"The fact that the decedent remained on the payroll of the general employer, the Florida Corporation, is to be considered and has been considered by the Commission, but the fact is not controlling or decisive, more especially so when the special employer had the direction and control of the particular matter at hand and of the employee during the progress of the work.

"Regarding the dependency of the widow, since the Commission has found that it has no jurisdiction over the employer of decedent, it follows that this Commission could not properly determine dependency.

"It is, therefore, the order of the Florida Industrial Commission that the claim of Mrs. Julia Green Berrier and Edwin C. Berrier, wife and son, respectively, of the decedent, be and same is hereby denied and disallowed."

Claimants took this appeal from a judgment of the Circuit Court of Duval County affirming the above award.

Appellant contends that the Florida Corporation was the general employer and the Virginia Corporation the special employer; that the relation of employer and employee existed between Floyd Berrier and both of said corporations, and that he, or his dependents, could look to the one or

to the other, or to both, for compensation for injuries due to occupational hazards. While citing other cases, appellant appears to rely mainly upon the case of Wright v. Cane Run Petroleum Company, 262 Ky. 251, 90 S. W. (2nd.) 36.

Appellees contend that in that case the special employee was performing a duty for the common benefit of the general and special employers; that the court held in that case that while the Cane Run Petroleum Company had no pecuniary interest in the drilling of the oil well in question, its completion so near to the land in which it was interested, the Williams land, would, it was believed, serve as a test well on the Williams land, and therefore, to this extent, the Cane Run Company was interested in its completion. It also appears that the Kentucky statute expressly allows the employee to sue the general employer or the special employer, or to proceed against the general employer for compensation, and such other person, the special employer, for damages sustained, but provides that he cannot collect from both.

But here we are dealing with two separate corporations. While there is considerable conflict in the decisions, it appears that according to the weight of authority in the United States, the general test in determining whether an employee is the servant of his original master, or of the party to whom he has been furnished, is whether in the particular service which he is engaged to perform he continues to be liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired. Independence Indemnity Co. v. Industrial Accident Commission, 203 Cal. 51, 262 Pac. 757; Parsons v. M. J. Daly & Sons, 114 Conn. 142, 158 Atl. 216; Allen-Garcia Co. v. Industrial Commission, 334 Ill. 390, 166 N. E. 78; Gagnon's Case, 128 Me. 155, 146 Atl. 82; Chisholm's

Case, 238 Mass. 412, 131 N. E. 161, Oklahoma General Power Co. v. The State Industrial Commission, 108 Okl. 251, 235 Pac. 1095; Persing v. Citizen's Traction Co., 294 Pa. 230, 144 Atl. 97; Lewis v. S. M. Byers Motor Car Co., 102 Pa. Super, 434, 156 A 899; Schneiders Workmen's Compensation Law, 2nd Ed. Sec. 24; 71C J. 403-408.

In Seaman Body Corporation v. Industrial Commission of Wisconsin, 204 Wis. 157, 235 N. W. 433, under a Workman's Compensation Statute very similar to our own, this test has been broken down into its component parts, yet in nowise deviating from the weight of authority, presenting a very clear statement of the principle which is supported by the weight of authority.

In the Seaman Body Corporation case, *supra,* the Seaman Body Corporation was engaged in manufacturing automobile bodies, and contracted with an adjoining company, Charles Abresch & Co. to buy a quantity of wooden automobile parts known as "arm rests" from the latter company. On February 21, the manager of the Abresch Company telephoned to the superintendent of the Seaman Corporation that on account of an accident at their company, they were short of men and needed help in order to get the arm rests out on contract date, asking the superintendent to send over some men to help out for a few days. The superintendent agreed to do this and asked two of his men to go. Both consented to go, after they were assured that the Seaman Corporation was to pay them. The two men worked a considerable number of hours at the Abresch plant, and then one, Tiskewicz, was hurt. At the time of the accident, Tiskewiscz was under the specific direction and control of the foreman of the Abresch Company.

The Abresch Company expected to pay the Seaman Corporation for these men, though there was no express agreement to do so. On previous occasions, employees had been

lent between the companies, and while paid by their general employer, their general employer had been reimbursed by their special employer.

Each Company denied that Tiskewicz was its employee at the time of the injury, and contended that he was the employee of the other. In deciding this question, Nelson, speaking for the Wisconsin Court, pointed out that the leading Wisconsin case of Cayll v. Waukesha Gas and Electric Co., 172 Wis. 554, 179 N. W. 771, and a later case, Spodick v. Nash Motor Co. (Wis.) N. W. 870, reaffirming the law of the Cayll case, were controlling, and further said:

"The legal principles established by the Cayll and Spodick cases may be briefly stated as follows: The relation of employer and employee exists as between a special employer to whom an employee is loaned whenever the following facts concur: (a) Consent on the part of the employee to work for a special employer; (b) actual entry by the employee upon the work of and for the special employer pursuant to an express or implied contract so to do; (c) power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue.

"The vital questions in controversies of this kind are: (1) Did the employee actually or impliedly consent to work for a special employer? (2) Whose was the work he was performing at the time of injury? (3) Whose was the right to control the details of the work being performed? (4) For whose benefit primarily was the work being done?"

Applying the principles of law established in these cases to the facts in the case at bar, we find that Floyd Berrier had given his oral consent to do the work for the Virginia Corporation, and had actually engaged in such work; that the work he was performing at the time of the injury was

that of the Virginia Corporation; that the Virginia Corporation had the right to control and supervise the details of the work being done by Floyd, and to determine whether or not it should stop or continue; and it was for the benefit of the Virginia Corporation that the work was being done, any benefit coming to J. R. Berrier therefrom was through the Virginia Corporation and not through any connection he had with the Florida Company.

The question of payment by the Florida corporation has been raised in the brief of appellants. It is the weight of authority that while payment of wages is a circumstance which may aid in determining the employer, that payment of wages or salary, of itself, is insufficient to establish that the receiver thereof is the servant of the one paying the wages or salary. Tarr v. Hecla Coal & Coke Co., 265 Pa. 519, 109 A. 224; Sgattone v. Mulholland & Gotwals, 290 Pa. 341, 138 A. 855, 58 A. L. R. 1463; Independence Indemnity Co. v. Industrial Accident Commission, *supra;* Indiana Iron Co. v. Cray, 19 Ind. App. 565, 48 N. E. 803; Crawfordville Shale Brick Co. v. Starbuck, 80 Ind. App. 649, 141 N. E. 7; Chisholm's Case, *supra;* Scheel v. Show, 60 Pa. Super Ct. 73; Lewis v. S. M. Byers Motor Car. Co., *supra;* 71 C. J. 407.

We are unable to find error in the judgment of the Circuit Court and the same should be and is hereby affirmed.

WHITFIELD and THOMAS, J. J., concur.

BUFORD and CHAPMAN, J. J., dissent.

Chief Justice TERRELL not participating as authorized by Section 4587, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

## ON REHEARING

PER CURIAM.—In this case, rehearing on briefs was allowed. After careful consideration of the able briefs filed

by counsel for the respective parties on this rehearing our conclusion is that our former opinion and decision was correct and should be adhered to.

Original opinion and judgment of affirmance adhered to and confirmed on rehearing.

TERRELL, C. J., WHITFIELD, BROWN and THOMAS, J. J., concur.

BUFORD and CHAPMAN, J. J., dissent.