Proceeding under the Workmen's Compensation Law by Charles H. Glisson, claimant, against Bryant G. Patton, individually, and as Patton Seafood Company, employer, and others. From an order of the circuit court reinstating an order of the Industrial Commission reversing an order in favor of claimant by the deputy commissioner, the employer and others appeal.
Order reversed.
The circuit judge and the parties litigant seem to be in full accord on the sole question involved in this controversy, namely, whether the appellee was at the time he was hurt the employee of the appellant, Patton Seafood Company.
When the matter reached us, the deputy commissioner had ruled that the injury arose out of and in the course of appellee's employment by the company; the commission had reversed this order; and the circuit judge had reinstated it.
Appellee's eye was cut by a flying bit of shell or mud while he was shucking oysters, and his claim for compensation was urged against Bryant G. Patton, individually, and as Patton Seafood Company.
Inasmuch as Patton admits ownership of the Patton Seafood Company, any reference to the appellant Patton hereafter should be taken as meaning him, individually. He maintains near Apalachicola a wharf where oystermen unload their catches, and on it is a building fully equipped, where the oysters may be removed from the shells and prepared for market. The house is furnished with bins where the oysters are opened, and the whole place is provided with screens, cement floors, and so forth, in order to meet the requirements of the State Health Department. On the wharf is a crane for use in unloading boats, and the appellant Patton keeps on hand a man to assist the tongers in discharging their cargoes. A bin is assigned to each gatherer, and as the oysters in a particular bin are opened, washed, and skimmed, credit is given the tonger, to whom that bin has been assigned, for the oysters produced, at the rate of $3.00 the gallon. The oysters of the various tongers are never commingled. *Page 840 
The circuit judge determined that apparently at this point title to the oysters passed from the tongsmen to the seafood company and that credit was given to the shucker at the rate of $1.10 per gallon and to the catcher at the rate of $1.90 per gallon.
The distribution of the money, however, does not seem to fall into any particular pattern. Frequently, but not invariably, the oysters are opened by the womenfolk of the tongsmen, but if they have completed this work they often engage in opening the oysters of others. On the other hand, many persons appear to do the shucking who have no relatives who are tongsmen. Not infrequently it happens that the tonger does not know who is opening the oysters brought to the dock by him and a shucker does not know whose oysters he is opening. As a consequence, if oysters are opened by members of the tonger's family, the appellant Patton pays for the product in one check, at the rate of $3.00 per gallon, but if this situation does not obtain, separate checks are given to tonger and shucker. It was explained by the appellant Patton that the procedure in the latter instance was followed as a matter of convenience and as the result of a custom which has long prevailed in the industry. That, in general, is the plan followed by the appellant Patton and those who take advantage of the facilities which he offers.
Coming now to the present case, it seems that the appellee was solicited by the manager of the Patton Seafood Company to come to the oyster house on a certain Sunday and assist in shucking oysters which had been delivered there the day before. Because of their perishable nature it was important that the oysters be shucked and readied for shipment without undue delay. Appellee was transported to the oyster house by an employee of the company, and when he reached there, the manager admitted him to the house. It was while he was engaged in this work that his eye was so injured that he eventually lost the sight of it.
If appellee was an employee of the appellant Patton he was, of course, entitled to compensation under the Workmen's Compensation Law. F.S.A. § 440.01 et seq. The primary test of the relationship of employee and employer is whether, in a particular service, the former is under the direction and control of the latter. Berrier v. Associated Indemnity Company, 142 Fla. 351, 196 So. 188.
From the whole record in this case, without materially disturbing the circuit judge's findings of fact, it seems to us there was no such direction and control of the appellee by the appellant Patton as to place him in that category. The only evidence we have found which is even suggestive of the exercise of such authority was that given by the appellant Patton himself, who stated that if it appeared that the oysters in one bin were not being shucked as rapidly as might be expected, while those in another bin were nearly exhausted, the manager would urge that the shuckers cooperate in seeing that all the oysters were shucked. He said that this was done because of the perishable nature of the product. The activities of the various parties about the plant which the appellant Patton owned were in their nature cooperative. He was principally concerned in the production of oysters for the market in one-gallon units. In order to harvest this seafood and encourage the tongers to bring to him their catch, he provided all the facilities necessary to unload the cargoes, to shuck, skim, and wash the oysters so that under the watchful eye of the health department they could be sold for human consumption. Plainly, the payment for the product was not on the basis of the amount of oysters in the shell collected by the tonger, but on the basis of the yield of those shells measured in gallons.
It appears to us that basically the debt was direct from the appellant Patton to the tonger for the price of $3.00 for each gallon of oysters produced from the tonger's catch, although in the circumstances we have detailed, separate payments were made to tonger and shucker. From our study of the entire enterprise the explanation that this was done primarily to secure payment of wages to the shuckers and secondarily *Page 841 
as an accommodation to the tonger seems reasonable, and the appellant Patton did not thereby assume the role of shucker's employer.
It occurs to us that if any of these shuckers chosen indiscriminately were to demand payment for the amount due to compensate him for his labors, this demand could be enforced only against the tongsman.
Lastly, we are unable to find testimony that the appellant Patton had the prerogative of discharging shuckers, according to the generally accepted meaning of that term, or that he undertook to employ them unless, indeed, the activities of his manager in importuning the appellee to go to the oyster house on the day he was injured may be taken to constitute an employment by the appellant Patton. We think that under the general arrangement this solicitation on the part of the manager was no more than an implied promise by him, under established custom, to pay the appellee, if he would assist in opening the oysters which had accumulated during the weekend, the opening of which was even more important to the tongers than to the appellant Patton, $1.10 of the amount which would be due to the tonger whose oysters he eventually opened.
For the reasons we have given we are impelled to reverse the order of the circuit court so that the order of the full commission will stand.
Reversed.
ADAMS, C.J., and SEBRING and HOBSON, JJ., concur. *Page 842