74 So.2d 554 (1954)
STUYVESANT CORP. et al.
v.
WATERHOUSE et al.
Supreme Court of Florida. Division B.
July 6, 1954.
Rehearing Denied September 28, 1954.
*555 Knight, Smith & Underwood, Miami, for appellants.
Lawrence G. Lally and Thomas C. Britton, Miami, and Gerald J. Klein, Miami Beach, Britton & Hodges, Miami, and Rodney Durrance, Tallahassee, for appellees.
DREW, Justice.
This case arises under the Workmen's Compensation Laws, F.S.A. § 440.01 et seq. The claimant, Fred Waterhouse, was employed as a beach boy by the Casablanca Hotel in Miami Beach, operated by the Casablanca Operating Company, herein called Casablanca. He started this work in July, 1951, and his duties included caring for the hotel cabanas and deck area at the pool and participating in water shows.
Next door to the Casablanca Hotel was the Lombardy Hotel, operated by the Stuyvesant Corporation, herein called Lombardy. Beginning in December, 1951, both hotels put on water shows for their guests each Sunday afternoon that weather permitted. For its shows the Lombardy used its regular employee, John Robuck, and Alan Moore, who was a beach boy at the Casablanca, and a third person who was *556 regularly employed away from both the hotels. The Lombardy paid $5 to each member of this group for each performance.
The Casablanca started water shows by using its two beach boys, Alan Moore and Fred Waterhouse, who is claimant here, and also John Robuck from the Lombardy. The Casablanca paid nothing extra to its own employees for putting on the shows and nothing to John Robuck from the Lombardy. John Robuck complained because he received no pay from the Casablanca for participating in the show; and, after that hotel refused to pay him any money, Robuck missed one or two performances. Thereupon, the Casablanca manager told the Lombardy manager that he would let the Casablanca beach boys, Alan Moore and the claimant, participate in shows at the Lombardy if John Robuck would continue to participate in the shows at the Casablanca. Pursuant to that arrangement between the managers of the two hotels, the trio performed at both hotels. Claimant received nothing from the Lombardy for the time that he performed in shows there although on some occasions that hotel's manager out of his own pocket gave claimant and the other Casablanca beach boys $5 to be divided between them.
On Sunday, January 20, 1952, the trio put on a show at the Casablanca and immediately went to the Lombardy for a similar performance. In participating in this second show, the claimant slipped from the diving board which was peculiarly close to the edge of the pool against which he fell. As a result of the fall claimant suffered two broken ankles and other injuries. He sought benefits under the Workmen's Compensation Act, making the owners of both hotels and their respective compensation carriers, parties defendant.
The foregoing is the substance of the findings of fact made by the Deputy Commissioner. From these findings of fact the Commissioner concluded that the claimant "was not injured as the result of an accident arising out of and in the course of his employment while in the employ of * * * Casablanca Operating Company," and further concluded that the claimant "was not in the employ of the * * * Stuyvesant Corporation, operating the Lombardy Hotel." Therefore, the Deputy Commissioner entered an order denying the claim for benefits under the compensation act.
The Full Commission, upon review of the order of the Deputy Commissioner, found that "the employment relationship in this instance is controlled by the Supreme Court's decision in the case of Berrier v. Associated Indemnity Company, 142 Fla. 351, 196 So. 188, and that the employee was a loaned employee within the meaning of the Court's opinion above referred to." Therefore, the Full Commission reversed that part of the order of the Deputy Commissioner which denied compensation to the claimant from the lending employer, Casablanca.
Upon appeal to the Circuit Court, that Court agreed that the employer-employee relationship was controlled by the case of Berrier v. Associated Indemnity Company, supra, but determined that, at the time of the accident, the claimant was in the employ of Lombardy and was not in the employ of Casablanca. Therefore, the Circuit Court entered an order reversing the order of the Full Commission with instructions that Lombardy be ordered to make compensation payments to claimant and that the action against Casablanca be dismissed.
From this latter order, Lombardy and its carrier appealed contending that there was substantial, competent evidence to support the order of the Deputy Commissioner and, therefore, that order should have been affirmed by the Circuit Court.
It was the duty of the Full Commission to determine whether the findings of the Deputy were supported by the record and, if so, to determine whether his order was correct under the law. It was the duty of the Circuit Court to determine whether the Full Commission observed the substantial evidence rule and whether the order of the Full Commission was correct in law. It is the duty of this Court to determine *557 whether the Circuit Court observed the substantial evidence rule and whether its order is correct under the law. See U.S. Casualty Company v. Maryland Casualty Company, Fla. 1951, 55 So.2d 741; Naranja Rock Company, Inc., v. Dawal Farms, Inc., Fla., 74 So.2d 282.
There is no one rule the application of which can determine the result in every case involving a loaned employee problem. As early as 1921, Justice Cardoza observed that the law pertaining to general and special employers is "beset with distinctions so delicate that chaos is the consequence." Cardoza, A Ministry of Justice, (1921) 35 Harvard Law Review 113, 121. And, pertaining to this field of law, it was recently stated that "Respectable authority for almost any position can be found". Nepstad v. Lambert, 235 Minn. 1, 50 N.W.2d 614, 620. In the only Florida case involving a "loaned employee" under the Workmen's Compensation Law (a case decided by us in 1939, some fifteen years ago) we observed that there was "considerable conflict" in the case law on this subject. Berrier v. Associated Indemnity Co., 142 Fla. 351, 196 So. 188.
In the Berrier case, the secretary employee of a Florida corporation, engaged in the manufacture of ice cream, consented to go and did go to Virginia to assist in the installation of new equipment of a Virginia corporation engaged in a similar line of business. His salary was paid by the Virginia corporation but was to be charged against his salary from the Florida corporation. While testing the new equipment, the employee was accidentally electrocuted. This Court affirmed a denial of the claim for workmen's compensation from the Florida corporation, after observing that the employee at the time of the accident was engaged in work which he had consented to do for the Virginia corporation and which was for its benefit.
In the Berrier case we stated in substance that a special employer to whom another employer's employee is loaned will become liable for injuries compensable under workmen's compensation where there is a contract of hire, express or implied, between the employee and the special employer; the work being done at the time of the injury is essentially that of the special employer; and the right to control details of that work is in the special employer. This general formula, as restated, was derived originally from the case of Seaman Body Corporation v. Industrial Commission, 204 Wis. 157, 235 N.W. 433. In that case, the Court was interpreting a workmen's compensation statute very similar to our own and stated that under this formula "the burden to compensate is placed upon the special employer whose work is being performed and upon the industry in which the employee is engaged and which is being primarily promoted." 235 N.W. 433, 436. This latter statement is in harmony with the correct interpretation of our own act to the effect that the particular industry being served at the time of injury is responsible in workmen's compensation where that identification can be clearly made and where the other prerequisites of the employer-employee relationship exist. See Naranja Rock Company, Inc. v. Dawal Farms, Inc., supra. On the final analysis, that is the very bedrock upon which workmen's compensation acts rest.
Lombardy first insists that it cannot be liable to claimant "because the claimant did not consent to be an employee of Lombardy." We do not find merit in this contention. It is true that there must be consensual relationship to effect the status of employer-employee under the workmen's compensation law. This requirement is derived from the act itself, which, in section 440.02(2), F.S. 1951, F.S.A., defines an employee as a "person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written * * *." (Emphasis supplied.)
However, we think the facts in the instant case depict a situation in which a contract of hire between Lombardy and the claimant must be implied as a matter of law. Here the record shows without dispute that Lombardy, after entering into the *558 arrangement for reciprocal services, permitted claimant to come upon its premises, use its equipment, and participate in its show under its direction. Further, Lombardy did not expect to obtain such services gratis. On the contrary, Lombardy paid in kind to Casablanca by allowing its own worker to perform at Casablanca. Having so acted, Lombardy cannot now, nor should it, under the circumstances here presented, deny responsibility under the workmen's compensation law.
Lombardy next asserts that, if the consensual relationship did exist between it and the claimant, nevertheless Casablanca and not Lombardy is the employer responsible for the compensation award. We do not agree. The undisputed facts in the record further show that Lombardy furnished to claimant the equipment and place of performance and directed the show in which he was injured, and that Casablanca was not in the business of furnishing performers for water shows and derived no direct benefit or profit from this show in which claimant participated at Lombardy. These undisputed facts require the conclusion and we hold that at the time of injury the particular work being done by claimant was essentially that of Lombardy and that Lombardy had the right to control the details of the work; and, therefore, as between Lombardy and Casablanca, the former is solely responsible for the entire amount of the award. The Circuit Court was, therefore, correct in holding that the Deputy Commissioner erred as a matter of law in concluding that claimant was not in the employ of Lombardy at the time of the accident and in holding that the Full Commission erred in its conclusion that Casablanca and not Lombardy was the employer responsible for any compensation to be awarded.
It was suggested that the substantial evidence rule precludes an order contrary to that of the Deputy Commissioner. With reference to the material matters set forth, there was practically no conflict in the evidence and the relationship of the claimant to Lombardy and to Casablanca was a question of law. See Cayll v. Industrial Commission, 172 Wis. 554, 179 N.W. 771.
The case of Rhinelander Paper Co. v. Industrial Commission, 206 Wis. 215, 239 N.W. 412, 413, relied upon by Lombardy, does not require a contrary result. In the Rhinelander Paper Company case, the American Engineering Company was making boiler replacements in the paper company plant. This latter company ordered claimant and other of its regular employees to render such assistance as was necessary to the employees of the engineering company in order to insure a prompt completion of this work; but at all times the paper company continued to supervise these employees. The engineering company reimbursed the paper company for the time of its employees so used. On the day of the accident, the claimant was assisting an employee of the engineering company for a few minutes to ascertain the difficulty in starting an air motor, which motor caused an injury to claimant. In affirming an order holding the paper company solely responsible for the award, the Wisconsin Court stated:
"We shall not attempt to reconcile the decisions of this and other courts in this field. They are to some extent at least irreconcilable. It is quite generally agreed that in order to transfer liability from the general employer to the one to whom the employee is loaned, there must be some consensual relationship between the loaned employee and the employer whose services he enters, sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do, he is performing his duty to the employer who gave the order. Whether *559 or not there is in a particular case such a change of relationship is often a matter of great difficulty and as to which reasonable minds may come to different conclusions. In this case the employment was temporary. It is clear that the claimant was performing services in obedience to the direction of the master and that there was no consent on his part, express or implied, sufficient to make him the employee of the American Engineering Company. Consent cannot be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another."
We recognize that in many instances an employee helping another may simply be responding to the commands of his master so that no new employer-employee relationship is created. However, the Rhinelander Paper Company case is clearly distinguishable upon its facts from the main case in that the work being done was of direct benefit to the paper company, which wanted to "insure a prompt completion of this work", and further, the claimant's engaging in the work was for only a few minutes at a time when he was on the premises of his regular employer and under that employer's immediate supervision.
The solution of this case has not been simple. The principal cause of the difficulty arises out of the great confusion created by the "loaned employee" doctrine in such cases. Our research leaves us with the definite impression that it is more of a theory than a fact and that the doctrine itself is without substantial foundation and has tended to confuse rather than clarify solutions to existing situations. Basically and fundamentally, after all the chaff is cast aside, the solution of almost every such case finally depends upon the answer to the basic, fundamental and bedrock question of whether as to the special employer the relationship of employer and employee existed at the time of the injury. If the facts show such relationship, the existence of a general employer should not change or be allowed to confuse the solution of the problem. See 1 Larson; Workmen's Compensation (1952) 711.
In reaching the decision in this case, we have held that the facts were such that the law implied a contract of employment. There is no doubt that the compensation act contemplates that it would be necessary in many instances to determine the employer-employee relationship from facts and circumstances as distinguished from formal contract of employment because of the use of the word "implied" in the act itself. This is a just and sensible conclusion for the obvious reason that in most instances where the beneficent provisions of the workmen's compensation acts are brought into play, the average working man has little knowledge of who his actual employer may be. And certainly, in this day of great corporate enterprises, it would be expecting too much even to anticipate that the average working man would have first-hand knowledge of the identity of his employer; nor is this at all necessary for him to receive the protection of the acts. If the facts are such that justify the conclusion that the employer-employee relation actually does exist, such conclusion creates just as great a legal relationship as that which would be evidenced by a formal contract of employment.
This case presents another angle which has concerned the Court. The litigation in this cause has been primarily litigation between two employers for the purpose of determining which one shall pay the bill. A similar situation was presented in Naranja Rock Company, Inc. v. Dawal Farms, Inc., supra. In the meantime the employee, primarily for whose benefit the acts were conceived and enacted, has been  to use the vernacular  "holding the bag." We recognize the fact, of course, that these employers have a perfect right to litigate these questions but we do feel that this situation presents a practical problem that would be worthy of consideration by the *560 Legislature. See Cayll v. Industrial Commission, supra, for discussion of the rule in England pertaining to a servant lent to another; and see 1 Larson, Workmen's Compensation (1952) 720, note 87, collocating states which have special statutory provisions on joint employment.
The decree of the Circuit Court is affirmed.
ROBERTS, C.J., and THOMAS and HOBSON, JJ., concur.