98 So.2d 399 (1957)
Asa E. MAIGE, d/b/a Maige's Sand Company, Petitioner,
v.
Ozell CANNON, Huffman-Wolfe Southern Corporation, Crawford and Company, and the Florida Industrial Commission, Respondents.
HUFFMAN-WOLFE SOUTHERN CORPORATION, Petitioner,
v.
Ozell CANNON, Asa Maige, d/b/a Maige's Sand Company, and the Florida Industrial Commission, Respondents.
Nos. A-28, A-29.
District Court of Appeal of Florida. First District.
November 12, 1957.
Rehearing Denied December 3, 1957.
*400 Carl R. Pennington, Jr., Tallahassee, for petitioner Asa E. Maige.
James Messer, Jr., and W.J. Oven, Jr., Tallahassee, for petitioner Huffman-Wolfe Southern Corp.
Charlton L. Pierce, Tallahassee, for respondent Ozell Cannon.
Burnis T. Coleman, Tallahassee, for respondent Florida Industrial Commission.
DREW, E. HARRIS, Associate Judge.
These petitions for certiorari from the Industrial Commission present for consideration the so-called "joint employer" doctrine affecting "general" and "special" employers under the Workmen's Compensation Act.
Asa Maige, hauler, and Huffman-Wolfe Southern Corporation, the purchaser of Maige's hauling services, filed separate petitions for certiorari from an order of the Industrial Commission which overruled the deputy commissioner's finding that Asa Maige was the sole employer of claimant and held them jointly liable for compensation to claimant Ozell Cannon for his injuries. The two petitions will be considered together.
Asa Maige was engaged in the general business of renting his flat-bed truck to be used in hauling goods, for which he made a combined charge for truck and driver and a separate charge for any additional labor necessary to perform the hauling service. The following facts are from a stipulation of the parties: "On a date in question, Huffman-Wolfe engaged the service of Maige's truck and driver and laborers to haul air condition machines from a warehouse to the job site at the University Library. It appears that machines were procured from the warehouse and hauled to the library where they were to be unloaded and placed in or near the building. Upon arrival at the job site, there was another truck unconnected with Asa Maige which was being unloaded. The presence of this other truck prevented the Maige truck *401 from moving into the proper place for its unloading. Being faced with the delay in unloading the Maige truck, an employee of Huffman-Wolfe either requested or directed the driver of the Maige truck to assist in unloading the other truck so that it could get out of the way. While the truck driver was engaged in helping unload the other truck, he received an injury to his foot." Ozell Cannon was the driver of the Maige truck mentioned above.
The deputy commissioner held Maige liable for compensation to Cannon, based on his findings, that "the claimant never accepted anyone other than Maige's Sand Company as his employer in any sense" and "when the claimant was injured he was doing work reasonably contemplated by his contract of employment with Asa Maige in his capacity as a contract hauler."
After a hearing, the Industrial Commission modified the deputy commissioner's order to make Maige and Huffman-Wolfe jointly and severally liable. The Commission based its order upon its acceptance of a well-known treatise writer's suggested theory of "joint" liability. I Larson, Workmen's Compensation Law § 48.40. Larson's definition, which is quoted by the Commission, would make both employers liable for workmen's compensation where there is joint employment of the injured claimant. "Joint employment occurs when a single employee, under contracts with two employers, simultaneously performs the work of both under the control of both." I Larson, op. cit. supra at p. 719.
The statute controls workmen's compensation in Florida, and the statute requires an employer-employee relationship as a predicate for liability of the particular employer. See §§ 440.02(1) (a), 440.02(2) (a), 440.02(4), 440.09 and 440.10, Florida Statutes, F.S.A. An employee of a particular employer is a "person engaged in any employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written." § 440.02(2) (a). In other words, "there must be a consensual relationship to effect the status of employer-employee under the workmen's compensation law." Stuyvesant Corp. v. Waterhouse, Fla. 1954, 74 So.2d 554, 557. This consent can, of course, be implied. See § 440.02(1) (a). Mr. Larson's definition, which we do not approve or disapprove, requires a consensual relationship with both employers, since it only applies when the employee is "under contracts with two employers."
There "is no doubt that the compensation act contemplates that it would be necessary in many instances to determine the employer-employee relationship from facts and circumstances as distinguished from formal contract of employment because of the use of the word `implied' in the act itself." Stuyvesant Corp. v. Waterhouse, supra, at page 559.
In a situation such at this it is better not to isolate too narrowly the incidents leading to the injury. The evidence shows that Huffman-Wolfe hired a specialized crew to do their specialty  loading, hauling and unloading. Maige furnished the crew and equipment as a service of a specialized business, and no evidence indicates any power in Huffman-Wolfe to fire any of the crew except by suggestion to Maige. Maige paid the crew at rates he negotiated. The deputy commissioner in these circumstances properly attempted to find the reasonable scope of the contracted work, and his finding that the injury occurred within the scope of that business and that claimant was not the employee of Huffman-Wolfe is supported by competent, substantial evidence. The Industrial Commission stated in its order that it is "undisputed that Maige did not control the details of the work engaged in by the claimant," and that the "details of the work done by the claimant were controlled by Huffman-Wolfe." This was apparently a reference to one of several criteria set out in Berrier v. Association Indemnity Co., 1939, 142 Fla. 351, 196 So. 188, 191: "Whose was the right to control *402 the details of the work being performed?" See, also, Stuyvesant Corp. v. Waterhouse, supra. In the present case the evidence shows that no boss (unless it were Cannon himself) generally directed the methods of lifting, moving and placing individual items which were to be hauled, or even the route to be used in hauling them. Huffman-Wolfe did not keep a man continually over the crew to supervise their individualized work, but had a man to direct them to the specified items to be hauled and to tell them the location they were to occupy at the place of destination. From this and other evidence the deputy commissioner could have determined that the right of control over significant "details" had not been clearly enough established by acts or agreement between Maige and Huffman-Wolfe to operate as a useful factor in the analysis of the situation. That is our conclusion from reading the testimony. However, the implication from factors previously enumerated is that Maige had the right to control the means of work of those engaged in his business of contract hauling. The control of minor details in a factual situation such as that presented here cannot be accepted as sufficient to form a consensual relationship of employer and employee  and this relationship is an absolute necessity under either the provisions of our compensation act or Larson's suggestion. Any other conclusion would be manifestly unjust to both employee and employer.
There was no implied contract between Cannon and Huffman-Wolfe. The present case is principally distinguished from Stuyvesant Corp. v. Waterhouse, supra, in that Maige was engaged in the business of supplying the services to the other putative employer which provided the opportunity for the injury, while his counterpart in the Stuyvesant case was not; and in the Stuyvesant case the equipment which was a factor contributing to the accident was supplied and controlled by the "special employer."
There is no evidence at all of mutual assent between Cannon and Huffman-Wolfe to form the basis of an express contract of employment between them. This factor distinguishes the present case from Berrier v. Associated Indemnity Co., supra, and also from Naranja Rock Co., Inc., v. Dawal Farms, Inc., Fla. 1955, 74 So.2d 282, where it was held that the claimant had an employment contract with each of two companies through a joint hiring agent.
The Industrial Commission argues that its decision in Whidden v. West and/or Northgate Baptist Holding Co., Decision No. 2-594 (May 1957) established the doctrine of joint liability, and that it became a law of the state by virtue of the Supreme Court denial of certiorari without opinion in West v. Florida Industrial Commission and Northgate Baptist Holding Co. v. Florida Industrial Commission (July 2, 1957).
It is unnecessary for us to decide the question of whether the denial of certiorari in compensation cases without opinion constitutes stare decisis because of a basic difference in that case and this one. In the Northgate Baptist case the deputy commissioner found  as a fact  that the injured employee was in the joint employ of the two employers while in this case the deputy commissioner found that the injured employee was in the sole employ of Asa Maige. In the former case the finding of the deputy commissioner was sustained by the Full Commission while in this case it was overruled.
Certiorari is granted and the order of the Full Commission is vacated with directions to reinstate the order of the deputy commissioner.
STURGIS, C.J., and WIGGINTON, J., concur.

On Petition for Rehearing
PER CURIAM.
The petition for rehearing in this cause, among other things, argues that this Court has not ruled upon the question of the alleged *403 excessiveness of the attorney's fee awarded to the claimant's attorney by the deputy commissioner although the same had been raised throughout the proceedings. While it does not appear on the face of the record that this Court has so ruled, the Court was of the opinion that the fee awarded by the deputy commissioner and considered in the light of the amount involved in this litigation was in excess of that which appeared to be justified. This matter, however, while not directly passed upon by the Court, was taken into consideration in awarding the amount of fees for services in this Court.
The other matters set forth in the petition have been considered but found to be without merit.
The petition for rehearing is denied.
STURGIS, C.J., WIGGINTON, J., and DREW, E. HARRIS, Associate Judge, concurring.
WIGGINTON, Judge (specially concurring).
The petition for rehearing asserts that in the opinion filed in this case this Court overlooked or disregarded prior opinions of the Supreme Court dealing with the subject of joint or special employer relationships. An analysis of the decisions cited by petitioner reveals that this assertion is without foundation.
In the Berrier case,[1] the Supreme Court of Florida approved certain criteria as being "* * * vital questions in controversies of this kind * * *." Included among them was the question: "(1) Did the employee actually or impliedly consent to work for a special employer?" And in that case it was found that the injured employee entered into an "arrangement" with the special employer whereby the latter offered and the former accepted special employment. In the Naranja Rock Co. case[2] it was found that the injured employee was, at the time of injury, under an implied contract of employment with the special employer. Similarly in the Stuyvesant Corp. case[3] the employee, Waterhouse, was found to have entered into an implied contract of employment with the special employer. The Northgate Baptist Holding Co. case[4] involved a claimant found to be under contract with two employers, both of whom were directing and controlling the claimant at the time of his injury. Thus, it is clear that in order to find special or joint employment in any case there must be a contract of employment between the claimant and each of the alleged employers.
It has been repeatedly held that, under the Workmen's Compensation Law of this State, the duty and function of fact finding rests in the Deputy Commissioner; and, that his findings, if supported by competent substantial evidence, are not to be tampered with on appeal. See Wilson v. McCoy Mfg. Co., Fla. 1954, 69 So.2d 659; U.S. Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So.2d 741.
In the present controversy the Deputy Commissioner found that "the claimant never accepted anyone other than Maige Sand Co. as his employer in any sense" and "when the claimant was injured he was doing work reasonably contemplated by his contract of employment with Asa Maige in his capacity as a contract hauler." That these findings are supported by competent substantial evidence is apparent from a review of the record.
*404 Under the Deputy's findings it appears with pristine clarity that the claimant herein was not performing services for Huffman-Wolfe, the alleged special employer, as a result of any contract of employment, either express or implied. This being true, there could be no joint or special employer relationship such as was found to have existed in the cases heretofore cited in this opinion.
Therefore Maige, being the sole employer at the time of claimant's injury, is liable for payment of compensation benefits due as a result of that injury.
For these reasons I concur specially in the order denying rehearing.
STURGIS, C.J., and DREW, E. HARRIS, Associate Judge, concur.
NOTES
[1] Berrier v. Associated Indemnity Co., 142 Fla. 351, 196 So. 188, 191.
[2] Naranja Rock Co., Inc. v. Dawal Farms, Inc., Fla. 1955, 74 So.2d 282.
[3] Stuyvesant Corp. v. Waterhouse, Fla. 1954, 74 So.2d 544.
[4] Whidden v. West and/or Northgate Baptist Holding Co., Florida Industrial Commission Decision No. 2-594 (May 1957); certiorari denied without opinion in West v. Florida Industrial Commission and Northgate Baptit Holding Co. v. Florida Industrial Commission.