215 So.2d 21 (1968)
Robert E. HAMILTON, Individually, and for the Use and Benefit of Trans-America Insurance Company, a Foreign Corporation Authorized to Do Business in the State of Florida, Appellants,
v.
SHELL OIL COMPANY, a Delaware Corporation Authorized to Do Business in the State of Florida, Appellee.
No. 1939.
District Court of Appeal of Florida. Fourth District.
October 25, 1968.
*22 Charles Desmond Crowley, Fort Lauderdale, for appellants.
Kirk Sullivan, West Palm Beach, for appellee.
REED, Judge.
Robert E. Hamilton, the plaintiff in the trial court, filed suit against the defendant, Shell Oil Company, in the Circuit Court for Palm Beach County for personal injuries allegedly arising out of the negligent maintenance of a dangerous condition on the defendant's premises. The defendant moved to dismiss plaintiff's amended complaint for failure to state a cause of action. The motion was granted and a final judgment entitled "Order of Dismissal" was entered for defendant on 21 November 1967.
The amended complaint avers that the plaintiff at all material times was an employee of a corporation named Manpower, Inc. He was paid by Manpower, Inc. which withheld taxes and social security from his salary. Pursuant to a contract between Manpower, Inc. and the defendant, Shell Oil Company, Manpower, Inc. furnished its employees to perform certain limited functions in connection with the operation of a gasoline station owned and operated by the defendant in Palm Beach County, Florida.
The plaintiff, according to the amended complaint, had received instructions from an employee of the defendant as to the procedures he was to follow upon the delivery to the station of gasoline by tank trucks. The plaintiff was instructed to inspect the tanks of the trucks before and after gasoline was pumped from the trucks into the defendant's underground storage tanks.
On 1 November 1965 while at the station the plaintiff climbed to the top of a tank truck to inspect its tanks. The climb was made by means of a metal ladder affixed to the truck in such a way that the metal frame of the truck became one of the rungs of the ladder. As plaintiff descended, his foot slipped on the metal frame which was smooth and slippery. The plaintiff fell and was injured.
The plaintiff charges that his injury was due to the negligent maintenance of the ladder and the defendant's failure to warn of the dangerous condition created by the condition of the ladder as to which the plaintiff was unaware at the time of the accident.
On the basis of these allegations, the trial court in the final judgment appealed from, stated:
"* * * In this case, Plaintiff was under direction of Defendant and Workmen's Compensation Law is exclusive.
"This action is dismissed and Defendant go hence without day * * *."
F.S. 1967, Section 440.10, F.S.A. provides:
"(1) Every employer coming within the provisions of this chapter, including any brought within the chapter by waiver of exclusion or of exemption, shall be liable for and shall secure the payment to his employees of the compensation payable under §§ 440.13, 440.15 and 440.16. * * *"
Under this language the relationship of employer-employee is essential to liability for workmen's compensation benefits, Maige v. Cannon, Fla.App. 1957, 98 So.2d 399, 401. From the portion of the trial court's Order of Dismissal quoted above, it appears that the trial court decided that such a relationship existed between the plaintiff and the defendant because of the allegations in the amended complaint that the defendant had exercised some control over the plaintiff's activities prior to the *23 accident. There is authority from other states which lends support to this view.[1] In Florida, however, control is not the only factor to be considered in determining the existence of an employer-employee relationship for the purpose of the Workmen's Compensation Law in a case like the present where the employee bears a working relation to two or more employers.
In Rainbow Poultry Company v. Ritter Rental System, Inc., Fla. 1962, 140 So.2d 101, 103, the Court held that the main factors to be considered in determining the existence of an employer-employee relationship for the purposes of liability under the Workmen's Compensation Law are: (1) whether or not a contract for hire, express or implied, exists between the employee and the alleged special employer; (2) whether or not the work being done at the time of the injury was essentially that of the alleged special employer; and (3) whether or not the power to control the details of work being done at the time of the accident resided in the alleged special employer.
These factors are not coequal. The first factor, that is the existence of a contract for hire, either express or implied, is a statutory prerequisite to the existence of an employer-employee relationship for purposes of the Workmen's Compensation Law because F.S. 1967, Section 440.02(2) (a), F.S.A., defines "employee" as:
"* * * every person engaged in any employment under any appointment or contract of hire * * * express or implied, oral or written * * *." (Emphasis added.)
The other factors outlined in Rainbow Poultry Co. v. Ritter Rental System, Inc. are basically indicators of the existence of the first factor. Any other relevant factors may be considered. For example, who pays the employee. In the present case, the contractual relationship between the defendant and Manpower, Inc. might be relevant as tending to show at least the intent of the former with respect to the existence of an employer-employee relationship between it and the plaintiff.
From the facts plead it cannot be concluded as a matter of law that a contract of hire existed between the plaintiff and the defendant at the time of the accident. This is particularly true where the amended complaint contained an express allegation to the effect that at all material times the plaintiff was an employee of Manpower, Inc. For purposes of the motion to dismiss, this allegation should have been taken as admitted.
We conclude that the trial court erred in holding as a matter of law based on the facts set forth in the amended complaint that a relationship of employer-employee for purposes of the Workmen's Compensation Law existed between the plaintiff and the defendant at the time of the accident in question.[2]
*24 A subsidiary point presented by the plaintiff asserts that the trial court erred in not permitting the plaintiff to amend its amended complaint by attaching thereto a copy of a purported contract between Manpower, Inc. and the Shell Oil Company. We cannot pass on the merits of this point because there is no support in the record for the contention. Because this cause must be remanded to the trial court, it may on remand consider any proper motion for leave to amend.
The judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
WALDEN, C.J., and OWEN, J., concur.
NOTES
[1] St. Claire v. Minnesota Harbor Service, Inc., D.C.D.Minn. 1962, 211 F. Supp. 521; Daniels v. MacGregor Co., 1965, 2 Ohio St.2d 89, 206 N.E.2d 554.
[2] The application of the Florida Workmen's Compensation Law where indicia of an employer-employee relationship exist with respect to more than one "employer" has troubled the courts of this state for a considerable period of time. Berrier v. Associated Indemnity Co., 1939, 142 Fla. 351, 196 So. 188; Naranja Rock Co. v. Dawal Farms, Inc., Fla. 1954, 74 So.2d 282; Stuyvesant Corp. v. Waterhouse, Fla. 1954, 74 So.2d 554; Maige v. Cannon, Fla.App. 1957, 98 So.2d 399 (opinion by Justice E. Harris Drew of the Florida Supreme Court); and Alter Sales Company v. Sykes, Fla. 1966, 190 So.2d 746. The rules which have been developed by the courts for application of the statute under these circumstances do not permit the imposition of joint liability on all "employers" bearing significant relationships to the injured employee even though the concept of joint employment has been recognized as a distinct contractual possibility. Naranja Rock Co. v. Dawal Farms, Inc., supra. It is, therefore, possible, by the application of these rules, to arrive at a result which as a practical matter would deny an injured employee the benefits of the act. This could occur, for example, in a situation where the so-called special employer is insolvent and has failed to secure the benefits of the act by appropriate insurance. Other states have tackled this problem with legislation. See Larson, Workmen's Compensation, 1967, Vol. A, § 48.40, n. 93. The application of the Workmen's Compensation Law under the circumstances mentioned presents a problem which merits the attention of the Florida Legislature.