576 So.2d 814 (1991)
Paul Edwin SMITH, Appellant,
v.
GREG's CRANE SERVICE, INC., a Florida Corporation, Appellee.
No. 90-0228.
District Court of Appeal of Florida, Fourth District.
March 13, 1991.
*815 James M. Tuthill and Neil B. Jagolinzer of Christiansen Jacknin & Tuthill, West Palm Beach, for appellant.
G. Morton Good and Thomas L. Abrams of Kelley Drye & Warren, Miami, for appellee.
FENNELLY, JOHN E., Associate Judge.
Paul Smith appeals a trial court determination that he, as a matter of law, was the borrowed servant of appellee Greg's Crane Service. The trial court, based on that finding, determined that worker's compensation was appellant's sole remedy and entered summary judgment against him on his negligence claim against Greg's Crane Service.[1] We reverse that determination based on the following discussion of both the facts and law applicable to this case.
On July 7, 1989, appellant was a lead carpenter for Jim Scott Construction on a job site in Jupiter, Florida. Appellee was a subcontractor employed to "fly" trusses on the job site. At approximately 10:15 A.M., appellee's crane operator, Kevin Hagen-Miller, arrived on the job site with the crane. The crane required both an operator and a helper. The helper had not reported for work so Hagen-Miller requested assistance from appellant. Appellant at the time of the request was with his supervisor, Jim Scott. Scott, after the request was made, accompanied appellee and appellant to the crane. Scott also was present checking the trusses that were to be put in place.
There was also evidence that construction trades frequently help each other out in a manner similar to what transpired in the present case. Indeed, appellant indicated he had filled in for the crane service on previous occasions. Appellant, acting under Hagen-Miller's direction and supervision, moved levers in the cab. While descending from the cab he slipped and fell, suffering the injuries to his head and neck. The entire incident took approximately three minutes and there was no evidence that Scott Construction and appellee had ever reached any overall agreement on a continuing basis to borrow or lend employees. There was also no evidence to suggest that Scott was in the business of furnishing help on a temporary basis to the crane service.
Both parties, based on the foregoing, moved for summary judgment. Appellant argued that appellee was his borrowed servant or special employee and was therefore restricted to worker's compensation as his sole remedy. Appellee argued that he remained a general employee of Jim Scott Construction and could recover for damages on a negligence theory from Greg's Crane Service. The trial court, in a detailed and comprehensive order, found that as a matter of law Smith was a borrowed servant of Greg's Crane Service and that worker's compensation was his sole basis for recovery.
Summary judgment is appropriate if the undisputed material facts demonstrate that the moving party is entitled to judgment as a matter of law. Even if the material facts are undisputed, however, summary judgment is inappropriate if different inferences can be drawn from the same undisputed facts. Locke v. Bank of Washington, 501 So.2d 1349 (Fla. 1st DCA 1987).
In the present case the undisputed facts could support two conclusions or inferences by the trier of fact. The first conclusion could be that when Scott, the *816 appellant's supervisor, accompanied Hagen-Miller and appellant to the crane he was still actively supervising appellant. This inference would preclude a finding that appellant became a borrowed servant. That conclusion, in turn, would allow appellant's negligence action against appellee.
The second inference, on the same facts, could support a finding that appellee was in fact a borrowed servant or special employee of the appellant. If that conclusion were reached, Smith, as a borrowed servant, would be restricted to worker's compensation benefits. Thus, in our view, summary judgment was inappropriate because the ultimate fact finder, and not the judge in a summary judgment setting, should make this determination. Locke at 1350.
Summary judgment was also improper in this case because of the presence and effect of the presumption of continuing general employment of Smith by Scott Construction. This presumption is, in our view, inextricably intertwined with the borrowed servant doctrine. This relationship has been a source of uncertainty in Florida law and requires extended discussion, both of the worker's compensation statute and the relationship of that statute to negligence actions in the contemporary work place.
From an historical standpoint worker's compensation statutes were designed to ameliorate what were perceived as unfair bars to recovery imposed on working men and women by common law doctrines such as contributory negligence, fellow-servant negligence, and assumption of risk. The statutes were designed to secure an admittedly incomplete remedy without regard to fault. The quid pro quo from the worker was the loss of some items of damages available to plaintiffs in ordinary negligence actions. See Fla.Jur.2d Workers' Compensation, Vol 57 § 1-18.
In this context the borrowed servant doctrine arose to ensure that the remedial intent of the statute was effectuated. Thus early cases that gave rise to the borrowed servant doctrine were almost factually uniform. They involved employers and insurance carriers that sought to avoid responsibility for payment of compensation benefits. A few seminal cases illustrate the genesis of the doctrine.
In Stuyvesant Corp. v. Waterhouse, 74 So.2d 554 (Fla. 1954), the claimant was generally employed by the Casablanca Hotel. Casablanca reached an agreement with the Lombardy Hotel whereby the claimant would perform in water shows at the Lombardy. In return an employee of the Lombardy participated in the same show when it was conducted at the Casablanca. The claimant was injured while performing at the Lombardy. Both hotel employers, predictably, claimed that the claimant was an employee of the other in order to avoid responsibility for compensation benefits. The hapless claimant was therefore initially found to be an employee of neither hotel and was denied benefits completely. The supreme court, in affirming a circuit court decision that the claimant was a special employee of Lombardy, described the borrowed servant doctrine in compensation cases, as:
"[M]ore of a theory than a fact ... [,] the doctrine itself is without substantial foundation and has tended to confuse rather than clarify solutions to existing situations."
Id. at 559. The court found, therefore, that under the unique facts of the case before it, there was an implied-in-law contract of employment between the claimant and Lombardy. The court termed this a just and sensible result because
[I]n most instances where the beneficent purposes of the workmen's compensation acts are brought into play, the average working man has little knowledge of who his actual employer may be. And certainly, in this day of great corporate enterprises, it would be expecting too much even to anticipate that the average working man would have first-hand knowledge of the identity of his employer; nor is this at all necessary for him to receive the protection of the acts.

Id. at 559 (Emphasis added). The Stuyvesant court also expressed concern over the course of the protracted litigation between *817 the employers that, in the court's words, left the injured employee "holding the bag". Id. Viewed in this context the borrowed servant doctrine was developed and employed as a shield to ensure that worker's compensations benefits were not denied to a deserving worker.
As indicated earlier, uncertainty did develop when the doctrine was employed affirmatively, i.e., to extinguish what would be an otherwise available negligence action against a separate employer where an employee was injured while performing separate tasks at the same work site. These situations ran the gamut from one employer contractually furnishing a second employer temporary help on a continuing basis to a given employee performing minor tasks on an ad hoc basis.
In view of the foregoing, Florida courts engaged in a delicate, fact specific approach that sought to ensure that the limited compensation benefits were available. Where appropriate, an injured worker might also obtain full compensation for injuries received as a result of the negligence of a separate employer.
Florida courts at the same time were obligated to effectuate a second policy imperative of compensation statutes. That imperative was the immunity from suit for the employer responsible for supplying compensation. The resulting doctrinal tension ultimately produced the presumption of continuing employment as a limitation on the operation and effect of the borrowed servant doctrine.
Hamilton v. Shell Oil Co., 215 So.2d 21 (Fla. 4th DCA 1968), illustrates the doctrinal development. In Hamilton, the plaintiff was generally employed by Manpower. Manpower, in turn, paid Hamilton and furnished employees like Hamilton to Shell Oil Company. The defendant, Shell, supervised Hamilton while he was performing tasks at a gas station it owned and operated. Hamilton slipped and fell at the gas station and brought a negligence action against the defendant. The trial court found as a matter of law that he was a special employee of Shell and was therefore restricted to worker's compensation.
This court reversed. It recognized that cases involving
[A]pplication of Florida's Worker's Compensation law where indica of an employer-employee relationship exists with respect to more that one employer has troubled the courts of this state for a considerable period of time.
Id. at 23.
The court then observed that the prerequisite for immunity under the compensation statute must be either an express or implied contract for hire. If such a contract were present then the employer was obligated by the statute to obtain compensation benefits. This statutory liability, if present, resulted in immunity. Simply put, that relationship, if present, begot the twins of duty and immunity.
The court, in conformity with earlier case law on the subject, reiterated the three part test that should be followed in determining the presence or absence of that relation:
(1) Whether or not a contract for hire, express or implied, exists between the employer and the employees.
(2) Whether or not the work being done at the time of the injury was essentially that of the special employer.
(3) Whether or not the power to control the details of the work being done at the time of the accident resided in the special employer.
Control, the court held, was not the only factor, nor were the factors coequal.[2] Rather the critical factor was, as indicated, a contract for hire. The contract triggered the obligation to provide compensation coverage. This, the court held, could not be determined as a matter of law on a motion to dismiss when the pleadings contained an allegation that the plaintiff was the employee of Manpower and not Shell.
*818 In our view, two conclusions emerged from Hamilton: 1) determination of a duty to provide compensation benefits, and hence, obtain immunity, must arise only from a contract for hire and 2) the absence of that contract would allow an injured worker to pursue a negligence claim against another employer even if some indicia of an employer-employee relationship were present.
In a subsequent decision, Shelby Mutual Insurance Co. v. Aetna Insurance Co., 246 So.2d 98 (Fla. 1971), the supreme court further limited the operation of the borrowed servant doctrine and recognized the presumption of continuing general employment. Shelby also involved a factual scenario that generated yet another dispute between insurance carriers. More critical to this discussion, however, was the analytical framework employed by the court in limiting the scope and operation of the borrowed servant doctrine.
The court began its analysis by observing that the initial issue in any alleged special employee situation was the existence of a contract for hire between the special employer and employee. The court, citing Larson's Workmens' Compensation, (1967) section 48.10 (1967), held the contract was essential because:
"The employee loses certain rights along with those he retains when he strikes up the new employment relationship. Most of all he loses the right to sue the special employer at common law for negligence".
Id. at 101 (Emphasis added). To prevent the foregoing, courts:
"[H]ave been vigilant in insisting upon a showing of a deliberate and informed consent by the employee before the new employment will be held a bar to common law negligence".
Id.
The court then approved the evidentiary approach advocated by Larson in his previously noted work. In the borrowed servant case,
There is no place for presumptions based on the beneficent purposes of the act. The only presumption is the continuance of the general employment which is taken as the beginning point of any lent employee problem. To overcome this presumption it is not unreasonable to insist upon a clear demonstration that a new temporary employer has been substituted for the old.

Id. (Emphasis added).
That the continuing vitality of the presumption of general employment cannot be seriously disputed was reaffirmed by the First District in Crawford v. Florida Steel Corp., 478 So.2d 855 (Fla. 1st DCA 1985). The First District, in reversing a summary judgment for the alleged special employer, reiterated that the party alleging a special employee defense has a substantial burden to overcome the presumption of continuing general employment in a negligence action against a separate employer.
Indeed this court has held that special employment must be demonstrated by "a definite arrangement between the general and special employers and the employee's knowledge thereof". Pepperidge Farms, Inc. v. Booher, 446 So.2d 1132 (Fla. 4th DCA 1984). That view was approved by the supreme court in Booher v. Pepperidge Farm, Inc., 468 So.2d 985 (Fla. 1985) when Justice McDonald, speaking for the court, observed,
"The actual employment relationship rather than the subjective intent of the parties should control in any determination whether a special employee may sue the special employer for work related injuries."
Id.[3]
Thus appellee in the present case had the burden of proof on the affirmative *819 defense that appellant was his borrowed servant. The borrowed servant status could only result from a clear and definite arrangement between the employers and with appellant's knowledge. In evidence code terms, once the uncontested facts demonstrate that appellant was the general employee of Jim Scott Construction a burden shifting presumption of general employment arose.[4] At that juncture, appellee had the burden of proof to demonstrate a clear, definite agreement between the employers, and appellant's knowledge and acquiescence thereto. The conflicting evidence in this case could not warrant a conclusion as a matter of law that appellant was appellee's borrowed servant.
In our view, this approach to the borrowed servant issue is consistent with the historical objective and intent of worker's compensation statutes. That objective was to eliminate the concept of fault from industrial accidents and to ensure that injured workers receive the limited compensation provided by the act. Negligence is simply not germane to the operation of the act.
If, on the other hand, the injured employee successfully pursues a negligence action, the statute provides for a lien for employee compensation benefits.[5] Thus the statute clearly envisions that a negligence action is not precluded by benefit recovery under the act. Indeed the Supreme Court, in a factually similar case, construed the 1974 amendment to the statute, and held that an employee of a general employer could receive compensation benefits and also sue a subcontractor for negligence. See Employers Insurance of Wausau v. Abernathy, 442 So.2d 953 (Fla. 1983). In such a scenario the injured worker receives prompt, admittedly incomplete compensation benefits and may also pursue a negligence action against a party not entitled to claim immunity under the act. Upon full recovery, however, the employee must account for benefits received under the act.
Based on the foregoing discussion this matter is reversed and remanded to the trial court for further proceedings consistent herewith.
ANSTEAD and LETTS, JJ., concur.
NOTES
[1] The trial court, in its order, placed great reliance on J.M. Foster, Inc. v. N.A. Logan, Inc., 483 So.2d 553 (Fla. 1st DCA 1986). In Logan, two employers disputed liability for compensation benefits. We feel, for policy reasons to be discussed subsequently, that Logan is inapplicable to the present case.
[2] Maige v. Cannon, 98 So.2d 399, 402 (Fla. 1st DCA 1957), also held that control of minor work details was insufficient to form a contract of hire. See, generally, § 90.201, Fla. Stat. (1989), et seq., Erhardt's Fla. Evidence.
[3] We believe that appellee's reliance on Justice Grimes' dissent in Thornton v. Paktank, 409 So.2d 31 (Fla. 2d DCA 1981), is misplaced. At bar, unlike in Thornton, there existed a definite and fixed agreement between the special and general employer. In addition, and also unlike the present, the general employer was in the business of providing temporary help. In any event Pepperidge Farms clearly holds that the actual contractual relationship controls. In our view, this is completely consistent with a fixed and definite employment relationship as discussed in this opinion.
[4] The evidence code provides for two types of presumptions. The first is a "Thayer" or "bursting bubble presumption". § 90.302(1); 90.302 Fla. Stat.; See also Thayer, Preliminary Treatise on Evidence 313-352 (1898). This presumption disappears when evidence is introduced to rebut it. The ultimate fact finder is, however, permitted to draw an inference to the presumed fact. The second, is a "Morgan" or "burden shifting" presumption. This second type of presumption requires the adverse party to prove the nonexistence of the presumed fact. Based on Shelby and Crawford, discussed previously, the presumption of continuing general employment has been treated as a burden shifting presumption. § 90.302(2) Fla. Stat.; See also Morgan, Some Problems of Proof 18 (1956). We adopt that view in light of the public policy that full compensation be available for injuries negligently received whenever possible.
[5] Fla. Stat. Ch. 440 (1989).