656 So.2d 181 (1995)
William SHERRILL, Linda R. Sherrill, a minor, and Scottie R. Sherrill, a minor, Appellants,
v.
CORBETT CRANES SERVICES, INC., a Florida corporation, and Seabreeze Operators, Inc., etc., Appellees.
No. 94-81.
District Court of Appeal of Florida, Fifth District.
May 5, 1995.
Rehearing Denied June 21, 1995.
*182 W.M. Chanfrau, of Chanfrau & Chanfrau, Daytona Beach, and Philip M. Burlington, of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellants.
Gary M. Hellman, of Kroll & Tract, Miami, for appellees.
GRIFFIN, Judge.
William Sherrill and his two minor children, Linda R. Sherrill and Scottie R. Sherrill (collectively "the Sherrills") appeal a summary final judgment entered in favor of Corbett Crane Services, Inc. ("Corbett") and Seabreeze Operators, Inc. ("Seabreeze").
Foley & Associates Construction Company, Inc. ("Foley") was the general contractor for the Marina Point Condominiums in Daytona Beach, Florida. In the course of construction, Foley rented a number of cranes from Corbett. The purchase order signed by Corbett required it to:
Furnish rental of crane of size and type as required with operator, including fuel, maintenance, standard rigging, block forks, concrete buckets and material slings... . [Emphasis added.]
Pursuant to this agreement, Corbett provided Foley with a thirty-ton crane and an operator named William English, who was employed by Seabreeze, an affiliate of Corbett. English worked on the job site without incident for six to eight weeks. However, on February 28, English was ordered to lift, by crane, a number of cement buckets, each weighing approximately 3,200 pounds, to the third floor of one of the buildings. After being told that Foley had already compacted the ground, English backed the crane up to the building. He and Foley's foreman, Dennis Wilson, then extended the four outriggers used to stabilize the crane. They also put "cribbing" under the outriggers for added stability. English completed a test extension of the crane and then began to "fly" a 3,200 pound bucket of cement 100 feet in the air, which he claims was well within the weight and extension capacities for this crane. During the course of the first lift, however, one of four outriggers used to stabilize the crane sank into the ground, causing the crane to "tilt" and the bucket attached to the crane to swing. Although English tried to power the load to the ground, it nonetheless continued to swing. Sherrill, a construction worker employed by Foley, was hit in the back with the bucket as it swung, sustaining severe injuries.
Sherrill received workers' compensation benefits from his own employer, Foley. He and his two minor children then brought this action against Corbett and Seabreeze for the negligent operation or maintenance of the crane.
Corbett and Seabreeze moved for summary judgment on the basis of the borrowed servant doctrine and worker's compensation immunity. Corbett asserted as the sole basis for its motion that English was a borrowed *183 servant of Foley because it was controlling him with hand signals at the time of the accident and argued that it therefore was relieved from liability under the worker's compensation statutes. Deposition excerpts attached to the motion established that English frequently needed a "flag man" to direct him with his lifts and that he was using a Foley employee as his "flag man" at the time of the incident. The court granted the motion for summary judgment without explanation. We reverse.
The key issue on appeal is whether English, Corbett's crane operator, was, as a matter of law, a borrowed servant of Foley thereby making him a fellow servant of Sherrill. We agree with Sherrill that this is a question of fact and summary judgment was improper.
It should initially be noted that had Corbett simply leased the crane to Foley, it would clearly be immune from liability under the worker's compensation statutes since its purported liability under these circumstances would be based solely on the "dangerous instrumentality" doctrine. Florida has long recognized that a worker injured by a leased dangerous instrumentality operated by a fellow worker is limited to no more recovery than that permitted by the worker's compensation statutes. Morales v. Ryder Truck Rental, 559 So.2d 317 (Fla. 3d DCA), review denied, 574 So.2d 142 (Fla. 1990); Smith v. Ryder Truck Rentals, Inc., 182 So.2d 422 (Fla. 1966)c.
By contrast, in this case, by leasing both the crane and an operator to Foley, Corbett may have become either a subcontractor or an independent contractor with respect to Foley. It is now well established under Florida law that a subcontractor or independent contractor can be liable in tort for injuries sustained by the employees of a general contractor on a construction site. Employers Ins. of Wausau v. Abernathy, 442 So.2d 953 (Fla. 1983).
Corbett urges that since its crane and its operator, English, were "leased" to Foley, English thereby became Foley's borrowed servant, and Corbett was relieved of liability under the worker's compensation statutes. It relies mainly on Halifax Paving, Inc. v. Scott & Jobalia Construction Co., Inc., 565 So.2d 1346 (Fla. 1990), in which a crane company which had lent a crane and operator to a general contractor had been sued for negligence by an employee of the general contractor. The crane company settled with the general contractor's employee and then brought an action against the general contractor for common-law indemnity, based on the theory that it should be indemnified because their liability was based solely on its ownership of the crane  a vicarious, derivative kind of liability  and any active negligence which caused the accident was solely attributable to the general contractor. In agreeing with this court that the crane company's payment to the injured employee had been voluntary and that an action for indemnity would not lie, the Florida Supreme Court said:
Florida has long recognized the "borrowed servant" rule. See Postal Telegraph & Cable Co. v. Doyle, 123 Fla. 695, 167 So. 358 (1936). Under this rule, one who borrows and exercises control over the servant or worker of another in effect assumes all liability for the activities of the borrowed servant or worker. Id. We believe the record contains substantial competent evidence to show that the crane operator became a "borrowed servant" within the definition of that term provided in Shelby Mutual Insurance Co. v. Aetna Insurance Co., 246 So.2d 98, 101 (Fla. 1971).
Similarly, this Court established in Smith v. Ryder Truck Rentals, Inc., 182 So.2d 422 (Fla. 1966), that a worker injured by a leased dangerous instrumentality operated by a fellow worker is limited to no more recovery than that permitted by the worker's compensation statutes. The central rationale of Smith is that leased equipment on a job site in effect has become the working tool of the employer. Id. at 424. Thus, the exclusivity principle of worker's compensation comes to bear. See § 440.11, Fla. Stat. (1987).
* * * * * *
The point of both Smith and our opinion here is that, while the third party certainly had no duty to provide worker's compensation *184 to the injured party, neither did the third party in any logical sense contribute to the workplace injury that actually occurred. In both logic and fairness, the injury here and in Smith was a work-place injury occurring as a result of a dangerous instrumentality in the control of the employer. This conclusion is only underscored by the fact that the jury agreed with Halifax that any active negligence was attributable to S & J. When this is the case, the exclusive remedy is worker's compensation.
Id. at 1347.
Halifax suggests, without deciding, that a crane company that hires out a crane and operator to a general contractor is immune from tort actions by injured employees of the general contractor because the crane company's operator is considered a special employee or borrowed servant of the general contractor.[1] At least one court, in Larzelere v. Employers Ins. of Wausau, 613 So.2d 510 (Fla. 2d DCA), review denied, 624 So.2d 267 (Fla. 1993), has applied Halifax Paving to conclude that a crane company which had leased a crane and operator to a builder was immune from suit by one of the builder's employees who was injured when shorejacks being raised by the crane operator fell and hit him. When the accident occurred, the builder's employees had seated the load on the hook and were directing the operator with hand signals. The court decided that the crane company was immune from liability in negligence based on the worker's compensation statutes, stating:
The trial court granted summary judgment on the ground that suit against KBH and Ward was barred by the exclusive remedy provision of section 440.11, Florida Statutes, the workers compensation statute. The trial court concluded that, as in Halifax Paving v. Scott & Jobalia Construction Co., Inc., 565 So.2d 1346 (Fla. 1990), the crane had become a workplace tool of Enterprise. See Smith v. Ryder Truck Rentals, Inc., 182 So.2d 422 (Fla. 1966). When a dangerous instrumentality is leased to an employer, the lessor shares the employer's worker's compensation immunity from suit by employees. Morales v. Ryder Truck Rental, 559 So.2d 317 (Fla. 3d DCA 1990). The crane operator, acting under Enterprise's direction, became Enterprise's borrowed servant.
Id. at 511. Halifax Paving makes it clear, however, that the question of whether the employee operating the equipment is to be considered a borrowed servant must be decided in accordance with the principles established in Shelby Mutual Insurance Co. v. Aetna Insurance Co., 246 So.2d 98, (Fla. 1971).
In Halifax Paving, the court held that the record supported the jury finding that the crane operator in that case was a borrowed servant. Id. at 1347. Similarly, in Postal Telegraph & Cable Co. v. Doyle, 123 Fla. 695, 167 So. 358 (1936), affirmed, 128 Fla. 707, 175 So. 515 (1937), the case which seemed to have developed the borrowed servant doctrine, the court held that the record supported a jury finding. Id. at 360. More recently, in Lund v. General Crane, Inc., 638 So.2d 146 (Fla. 4th DCA), review denied, 649 So.2d 233 (Fla. 1994), the Fourth District reminded us that the supreme court in Halifax was reviewing a jury finding of borrowed servant.[2] The Halifax court thus was not faced with the question of what establishes borrowed servant as a matter of law; rather that court's concern was whether there was substantial competent evidence to support the jury's verdict. The fact that the court in its brief opinion mentioned only the hand signals in no way suggests that hand signal control over a crane operator alone is sufficient to establish "borrowed servant" under Shelby Mutual. Thus, the issue remaining in this case is whether the evidence established as a matter of law that English was *185 Foley's borrowed servant or special employee when the accident took place.
The Shelby test to determine whether an employee is a borrowed servant was succinctly summarized by the court in Crawford v. Florida Steel Corp., 478 So.2d 855 (Fla. 1st DCA 1985) as follows:
The courts have generally agreed that the criteria for determining the existence of an employer-employee relationship for purposes of the "borrowed servant" doctrine are: (1) whether a contract for hire, expressed or implied, exists between the employee and the alleged special employer; (2) whether the work being done at the time of the injury was essentially that of the alleged special employer; and (3) whether the power to control the details of work being done at the time of the accident resided in the alleged special employer. Rumsey [v. Eastern Distribution, Inc., 445 So.2d 1085 (Fla. 1st DCA 1984)] supra; Hamilton v. Shell Oil Company, 215 So.2d 21 (Fla. 4th DCA 1968), later appealed 233 So.2d 179 (Fla. 4th DCA 1970), cert. den., 237 So.2d 762 (Fla. 1970); see generally, 1C Larson, Law of Workmen's Compensation, § 48.00 (1985). The factors referred to are not equal, the first factor being the most important, and the second and third factors being merely indicators of the existence of the first factor. Shelby Mutual Insurance Company v. Aetna Insurance Co., 246 So.2d 98, 101 n. 5 (Fla. 1971). Since the contract for hire to be proved is frequently an implied one, factors showing a consensual relationship such as benefit, right of control and payment of compensation are sometimes considered. Id. at 101.
478 So.2d at 859. Shelby also noted that there is a presumption of continuing general employment, or employment by the original employer (here, the crane company), which can be overcome only by a clear demonstration that a new temporary employer has been substituted for the old. Shelby, 246 So.2d at 101 (quoting 1A Larson, Law of Workmen's Compensation, § 48.10 (1967)).
In arguing that the facts developed in this case did not support entry of summary judgment in favor of Corbett, even in view of the limited discovery which was completed in this case, the Sherrills correctly contend that the evidence supports conflicting inferences concerning whether a contract for hire, expressed or implied, existed between English and Foley and whether the power to control the details of work being done at the time of the accident resided in Foley. The depositions of English and Corbett established that Corbett was in the business of renting cranes and providing skilled operators for those cranes, as it had done for Foley. According to English, neither Grier (Foley's superintendent) nor Wilson (Foley's foreman) instructed him in the operation of his crane; they simply told him "where to set up and what to do." Furthermore, while English testified that his supervisors on the Marina Point project included Grier and Wilson, he testified that they included supervisors "from where I work". English acknowledged that he had the "final say" on operation of the crane and that he could override anyone on the job site and take the crane back to Corbett if safety were an issue. Also, he was paid by Seabreeze, not Foley.
The Restatement explains the relevancy of such testimony:
Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other. It is not conclusive that in practice he would be likely to obey the directions of the general employer in case of conflict of orders. The question is whether it is understood between him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business of and subject to the direction of the temporary employer as to the details of such act. This is a question of fact in each case.
Restatement (Second) of Agency § 227, comment a (1958).
According to the Restatement, a continuation of general employment is indicated where the lent employee has the skill of a specialist. Restatement (Second) of Agency § 227, Comment c (1958). This same continuation *186 of general employment is also indicated where the original employer has supplied heavy equipment, as well as an operator:
A continuance of general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality, and these may be opposed to the interests of the temporary employer. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues. Upon this question, the fact that the general employer is in the business of renting machines and men is relevant, since in such case there is more likely to be an intent to retain control over the instrumentality. A person who is not in such business and who, gratuitously or not, as a matter not within his general business enterprise, permits his servant and instrumentality to assist another, is more apt to intend to surrender control.
Id. Larson appears to agree that furnishing heavy equipment is also indicative of the operator's continuing general employment:
The factor that seems to play the largest part in lent-employee cases is that of furnishing heavy equipment. Many cases have found continuing liability in the general employer when he furnishes operators together with road equipment, excavating equipment, stead and truck shovels, draglines, cranes, trucks, air drills, air riveters, welding equipment, and barges. Although there are plenty of contra cases involving cranes, trucks, and bulldozers, generally based on overriding evidence of control by the special employer, and sometimes on exclusive possession of the necessary license by the special employer, the majority of the decisions have been influenced by the arguments both that the general employer would naturally reserve the control necessary to insure that his equipment is being properly used, and that a substantial part of any such operator's duties would consist of the continuing duty of maintenance of the equipment.
1C Larson, Law of Workmen's Compensation, § 48.40 (1985).[3]
Based on the foregoing, we conclude that Corbett's showing was insufficient to establish English's status as a borrowed servant of Foley as a matter of law and summary judgment was improvidently entered. Also, since the motion for summary judgment did not address the claim in count II that Sherrill's accident was caused by a malfunction of the crane and the record is silent on this issue, summary judgment on the issue of negligent maintenance must be also reversed. Because of our disposition of the summary judgment, we need not address the Sherrills' claim that Corbett failed to meet its discovery obligations.
REVERSED and REMANDED.
DAUKSCH and COBB, JJ., concur.
NOTES
[1] A general employer is one who contracts directly with an employee, while a special employer is one to whom the general employer has loaned his employee. Stuyvesant Corp. v. Waterhouse, 74 So.2d 554 (Fla. 1954), and Berrier v. Associated Indemnity Co., 142 Fla. 351, 196 So. 188 (Fla. 1939). In this latter instance, the employee is known as a special employee, or sometimes a borrowed servant.
[2] See also Sagarino v. Marriott Corp., 644 So.2d 162 (Fla. 4th DCA 1994).
[3] Kurfess v. Frohlick Crane Service, Inc., 543 P.2d 1304 (Colo. App. 1975) demonstrates the reasoning applied in those cases in which the courts refuse to apply the borrowed servant doctrine and find that the crane company is the crane operator's employer. For the reasoning applied in those cases in which the crane operator is found to be a borrowed employee, see Parker v. Joe Lujan Enterprises, Inc., 848 F.2d 118 (9th Cir.1988) and Walters v. Metropolitan Erection Co., 644 So.2d 1143 (La. App. 1994), writ denied, 649 So.2d 420 (La. 1995). For a case holding that the question is an issue of fact based on evidence similar to that presented here, see Ferguson v. Lambert, 501 So.2d 911 (La. App. 1987).