744 So.2d 1062 (1999)
GENERAL CRANE, INC., a Florida corporation, and Greg Teslia, Appellants,
v.
Grady McNEAL and Annette McNeal, his wife, Appellees.
No. 98-3328.
District Court of Appeal of Florida, Fourth District.
September 22, 1999.
Rehearing Denied November 3, 1999.
*1063 Shelley H. Leinicke of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Fort Lauderdale, for appellants.
Jeffrey M. Fenster of Fenster and Faerber, P.A., Plantation, and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellees.
STONE, J.
We affirm a final judgment in favor of Appellees against General Crane, Inc., (General Crane) and Teslia, a crane operator, for a personal injury to Grady McNeal on a construction site.
McNeal is an employee of Form Works, Inc., a construction company that had entered into a contract to lease a crane and operator from General Crane at Form Works' construction site. We hold that the trial court correctly rejected Appellants' argument that Teslia was the "borrowed servant" of Form Works in denying Appellants' motion for directed verdict and in directing a verdict for the plaintiffs on that issue.
The contract provided that the crane would be leased to Form Works complete with specified equipment and operator. The contract also provided:
Operation, Maintenance and Repair; Return: Lessor will employ at its own expense competent personnel to operate and maintain the equipment in accordance with the manufacturer's operation manuals (which Lessee agrees to return upon termination of lease). Lessor will operate, service, maintain and repair the equipment at its own expense and keep it in good working order. Lessee shall immediately notify General of the necessity for any repairs to the equipment. Lessee shall not make any alteration or modification to the equipment without the prior written consent of General. General may, for the purpose of inspection, at all reasonable times enter upon any job, building or place where the equipment is located. Lessee shall return the equipment in the same condition as received, with components similarly assembled and without concrete splatter.
The contract called for General Crane to supply its own worker's compensation coverage.
There was further evidence that only General Crane and General Crane employees could operate the cranes. Form Works had no contract with Greg Teslia, the operator, nor did its owner, Marks, who relied on General Crane to supply the operator, know anything about Teslia prior to the inception of the lease. Form Works did not issue payroll checks to Teslia, and Marks never considered Teslia to be an employee of Form Works. No one at Form Works instructed Teslia on how to operate the crane. Furthermore, Teslia had complete authority to stop operating the crane if he felt it had become unsafe *1064 and had the final say in whether the crane operation should shut down in case of high winds or other perils. If Marks was dissatisfied with the crane operator, he would have to call General Crane to take action.
Form Works' employees, including McNeal, supplied the signals to direct the operation of the crane at the site. Form Works also determined the hours the crane was used, the day-to-day location and need for the work performed by the crane, and if two subcontractors needed to use the crane, the Form Works supervisor would assign priority for usage.
Teslia testified that while he submitted his hours to Form Works' supervisor for confirmation, General Crane was his employer and paid his wages. If Teslia needed to take a day off, he would obtain approval from General Crane but would also apprise Form Works.
McNeal was injured during Teslia's operation of the crane. He testified that radio signals were used to direct Teslia's operation of the crane because of the height of the crane. At one point, McNeal turned his radio over to another person who was directing a different crane on the premises because the other radio's batteries were not functioning. It was at this point that Teslia, without a signal from McNeal, operated the crane to load a form onto a truck. After placing the form in the truck, Teslia pulled up the cables, again without a signal, and a panel that McNeal was standing on flipped over. McNeal obtained worker's compensation benefits for his injuries through his employment with Form Works and sued Appellants in tort.
General Crane and Teslia raised the affirmative defense of statutory immunity under Florida worker's compensation laws. We reject Appellants' contention that when Form Works leased the crane and operator, Teslia became Form Works' "borrowed servant" and that, therefore, McNeal's only remedy is under worker's compensation statutes.
In Shelby Mutual Insurance Company v. Aetna Insurance Company, 246 So.2d 98 (Fla.1971), the supreme court enunciated the law applicable to the "borrowed servant doctrine," declaring a presumption in favor of the continuance of the general employment. Only if General Crane could overcome the presumption and prove that Teslia was a borrowed servant, would it enjoy immunity from liability pursuant to section 440.11, Florida Statutes. However, as stated by the court in Shelby, the presumption can only be overcome by a clear demonstration that a new temporary employer has been substituted for the old, which demonstration should include a showing that a contract was made between the special employer and the employee, proof that the work being done was essentially that of the special employer, and proof that the special employer assumed the right to control the details of the work....
Id. at 101; see also Smith v. Greg's Crane Serv., Inc., 576 So.2d 814 (Fla. 4th DCA 1991).
The first factor, whether a contract for hire, expressed or implied, exists between the employee and the alleged special employer, is the most important factor in deciding whether an employee is a "borrowed servant." See Sherrill v. Corbett Cranes Servs., Inc., 656 So.2d 181 (Fla. 5th DCA 1995); Smith v. Greg's Crane Serv., Inc., 576 So.2d at 817. Clearly, here, no contract, express or implied, existed between Teslia and Form Works. As stated in Smith, "The borrowed servant status could only result from a clear and definite arrangement between the employers and with the [employee]'s knowledge." Id. at 819.
The other two factors, whether the work performed was the work of the alleged special employer and whether the special employer exercised control over the employee, are essentially indicia of the existence of the first factor. See Sherrill, 656 So.2d at 185. Here, the work performed was the work of Form Works; however, *1065 the evidence showed that Form Works exercised little, if any, control over Teslia's operation of the crane. Its direction of the work to be done, and its employees' roles in assisting Teslia's performance are insufficient to prove control by Form Works. See Sherrill, 656 So.2d at 184.
We are not unmindful of General Crane's reliance on the character of the leased equipment. It cites cases holding that "worker's compensation is the sole remedy available where a worker is injured by a borrowed dangerous instrumentality" to absolve it from liability. See, e.g., Commercial Coatings of Northwest Fla., Inc. v. Pensacola Concrete Constr. Co., 616 So.2d 960 (Fla.1993); Halifax Paving, Inc. v. Scott & Jobalia Constr. Co., 565 So.2d 1346 (Fla.1990); Morales v. Ryder Truck Rental, 559 So.2d 317 (Fla. 3d DCA 1990). However, a competing principle enters into play where a general employer rents equipment of considerable value along with a servant to operate it. In such a case, it is presumed that the general employer expects the employee to protect its interest in the equipment, which interest may be contrary to the interests of the temporary employer, thus, militating in favor of the presumption of continued general employment. See Sherrill. As stated in Venezia v. Egan, 671 So.2d 175 (Fla. 5th DCA 1996),
[T]he presumption of continued general employment makes particularly good sense in those situations where an employee is provided for the specific purpose of operating heavy equipment belonging to the lending employer because the lending employer, who owns expensive and often complex machinery, would naturally prefer to continue control and maintenance of that machinery, and thus be reluctant to lease his equipment without also sending along an employee who has knowledge of the equipment and an interest in seeing that the equipment is used and maintained properly.
Id. at 177-78.
We distinguish Halifax Paving, where, in contrast to this case, the facts showed that the special employer completely controlled the crane operator's activities. Here, there was no evidence to overcome the strong presumption of continued general employment. We also deem Commercial Coatings inapposite as the negligent operator was an employee of Commercial Coatings; hence, the "borrowed servant" doctrine did not apply. Nor did Morales involve the borrowed servant doctrine.
As to all other issues raised, we also find no reversible error or abuse of discretion. Therefore, the judgment is affirmed.
DELL and GROSS, JJ., concur.