921 So.2d 836 (2006)
John BRUNO, Appellant,
v.
DESTINY TRANSPORTATION, INC., a Florida corporation, JDH Concrete Plumbing, Inc., a Florida corporation, Dustin Gamboa, and Louis Garcia, Appellees.
No. 2D04-5300.
District Court of Appeal of Florida, Second District.
March 3, 2006.
*838 M. Katherine Ramers of M. Katherine Ramers, P.A., Dunedin, for Appellant.
Shelley H. Leinicke of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Ft. Lauderdale, for Appellees Destiny Transportation, Inc., Dustin Gamboa, and Louis Garcia.
No appearance for Appellee JDH Concrete Plumbing, Inc.
ARTIGLIERE, RALPH, Associate Judge.
Appellant, John Bruno, appeals a final summary judgment entered in favor of appellees, Destiny Transportation, Inc. (Destiny), Dustin Gamboa, and Louis Garcia. For the reasons set forth in this opinion, we reverse.

I. Factual History
Bruno, an employee of LCC Suncoast, Inc. (LCC), brought a personal injury negligence action as a result of injuries sustained while working on a construction site. Lykes Fertilizer contracted with LCC, a general construction contractor, to reconstruct concrete walls on Lykes' property. LCC contracted with JDH Concrete Plumbing, Inc. (JDH),[1] to provide a concrete pump and pump operators to propel concrete into wooden wall forms on the job site. JDH, in turn, leased Gamboa and Garcia from Destiny, an affiliate of JDH, to operate the pump equipment.
On the day in question, Bruno was guiding the flow of concrete into wall forms by using a hose attached to the concrete pump. Gamboa and Garcia operated the pump equipment and followed hand signals by other LCC employees to determine when to turn the pump on and when to shut it off. Bruno was injured when the *839 hose clogged, pressure built up, and the hose disengaged, hitting him in the face.
Bruno received workers' compensation benefits from LCC and then filed a personal injury suit against Destiny, Gamboa, and Garcia. Destiny, Gamboa, and Garcia filed a motion for summary judgment contending, in part, that the suit was barred because the workers' compensation statutes extended immunity to Destiny, Gamboa, and Garcia or, alternatively, because Gamboa and Garcia were borrowed servants of LCC.
The record contains several depositions including those of Garcia, Gamboa, LCC's president, LCC's construction manager, LCC's foreman, JDH's president, and Destiny's owner and president. For purposes of this appeal, the pertinent testimony indicated: (1) LCC and JDH did not have an express written contract and typically used a renewed rate sheet; (2) Destiny employed Gamboa and Garcia and was responsible for paying them; (3) LCC's foreman could tell hired pump operators where to set up, but the operators would typically just arrive and begin setting up on their own; (4) LCC had no direct authority over the details of the work of the pump operators; and (5) if LCC became dissatisfied with the operators' work, it could tell JDH not to send those operators again, but it could not directly fire the operators.
In his deposition, Garcia testified that he was employed by JDH but that he was unaware of ever having worked for LCC and that no one at the construction site supervised his activities.
Gamboa testified that he worked for JDH and not for LCC. However, Gamboa also asserted that on the day of the incident, LCC was his boss because that was the company he was pumping concrete for and he did whatever LCC told him to do.
Although both Gamboa and Garcia testified JDH was their employer, other testimony indicated that JDH and Destiny were essentially one and the same entity. At the hearing, the appellees' attorney told the trial court that JDH and Destiny were "kind of one group, and they all run out of the same corporate office." And in his deposition, Gamboa testified that JDH and Destiny were "the same thing."
The trial court ultimately granted the motion for summary judgment, concluding, in part, that "[t]he immunity from suit provided by Florida Worker's [sic] Compensation Statutes extends to Destiny Transportation, Inc., Dustin Gamboa and Louis Garcia." The trial court did not specifically address the issue of whether Gamboa and Garcia were borrowed servants of LCC.
On appeal, Bruno contends there are disputed material facts regarding the application of workers' compensation immunity to Destiny, Gamboa, and Garcia and regarding the borrowed servant status of Gamboa and Garcia. Thus, Bruno argues that summary judgment was inappropriate.

II. Analysis
"The law is well settled in Florida that a party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought." Moore v. Morris, 475 So.2d 666, 668 (Fla.1985). "[N]either the trial court nor the appellate court is justified in weighing facts and meting out justice according to the conclusion reached." Yost v. Miami Transit Co., 66 So.2d 214, 216 (Fla.1953). "If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to *840 prove the issues, it should be submitted to the jury as a question of fact to be determined by it." Moore, 475 So.2d at 668 (citations omitted). Trial courts must be especially cautious in granting summary judgment in negligence cases, and "summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law." Id.

A. Statutory immunity does not extend to Destiny, Gamboa, and Garcia under the facts of this case
We first turn to the issue of statutory immunity from liability afforded to certain employers for on-the-job accidents. Appellees contend that under sections 440.10 and 440.11, Florida Statutes (2000), they are statutorily immune from tort liability and Bruno is limited to recovering workers' compensation benefits from LCC. Bruno contends that an exception to statutory immunity applies under the facts of this case. We agree with Bruno.
Section 440.10(1)(a) addresses contractors' liability for providing workers' compensation benefits by providing:
Every employer coming within the provisions of this chapter, including any brought within the chapter by waiver of exclusion or of exemption, shall be liable for, and shall secure, the payment to his or her employees, or any physician, surgeon, or pharmacist providing services under the provisions of s. 440.13, of the compensation payable under ss. 440.13, 440.15, and 440.16. Any contractor or subcontractor who engages in any public or private construction in the state shall secure and maintain compensation of his or her employees under this chapter as provided in s. 440.38.
Section 440.10(1)(b) further expands contractors' liability by providing:
In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment; and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
Because LCC sublet part of the construction work to JDH, who, in turn, leased employees from Destiny, LCC was the statutory employer of both its own employees and any employees provided by JDH and Destiny and was responsible for providing workers' compensation benefits for all such employees. See Abernathy v. Employers Ins. of Wausau, 428 So.2d 272, 273 (Fla. 2d DCA 1982). Employers are statutorily immune from liability beyond that provided in section 440.10. This statutory immunity extends to employees acting in furtherance of the employer's business. Section 440.11(1) provides in relevant part:
The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to ... the employee. The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive benefits under this chapter.
This special statutory immunity does not apply, however, where an employee of one subcontractor is injured by an employee of another subcontractor. See § 440.10(1)(e). This exception exists because if a subcontractor is not liable for payment of workers' compensation benefits *841 for the employees of the other subcontractor, the injured employee should not be limited to recovery under the workers' compensation scheme. One who does not have the duty to provide workers' compensation coverage has no reason to expect workers' compensation immunity. Immunity is based on a quid pro quo involving the duty of providing workers' compensation benefits, the absence of which eliminates the corresponding immunity. See Employers Ins. of Wausau v. Abernathy, 442 So.2d 953, 954 (Fla.1983).
In this court's Abernathy opinion, we expanded the scope of section 440.10(1)(e) to situations where a general contractor's employee is injured by the negligence of a subcontractor's employee. 428 So.2d at 276. We noted that by the creation of section 440.10(1)(e), the legislature abolished the "common employment" doctrine and replaced it with the principle that "among employees of subcontractors, immunity follows liability to secure compensation." Id. at 275. In explaining the extension of section 440.10(1)(e) to cases involving general contractors and subcontractors, we stated: "Just as there is no `lateral' liability to secure compensation for employees of other subcontractors, a subcontractor has no `liability' to secure compensation for employees of the general contractor." Id. Because subcontractors are not liable for securing workers' compensation benefits for employees of a general contractor, they are not immune from suit by the general contractor's employees. See id.
This court then certified the following question to the Florida Supreme Court: "CAN THE EMPLOYEE OF A `CONTRACTOR', HAVING RECEIVED WORKMAN'S COMPENSATION BENEFITS FROM HIS EMPLOYER, SUE HIS EMPLOYER'S SUBCONTRACTOR FOR DAMAGES ARISING OUT OF THE NEGLIGENCE OF THE LATTER'S EMPLOYEE?" Id.
Ultimately, the supreme court agreed with and expressly adopted this court's opinion and analysis. Employers Ins. of Wausau, 442 So.2d at 954. Likewise, other districts have consistently followed that holding. See Sherrill v. Corbett Cranes Servs., 656 So.2d 181, 183 (Fla. 5th DCA 1995); Smith v. Greg's Crane Serv., 576 So.2d 814, 819 (Fla. 4th DCA 1991).
Here the subcontractor, Destiny, was not required to secure workers' compensation for employees of the general contractor, LCC. Pursuant to the opinions by this court and the supreme court, the section 440.10(1)(e) exception applies to this case and Destiny and its employees are not statutorily immune from suit. However, this conclusion leaves open the question of whether immunity arises in this case under the common law borrowed servant doctrine.

B. Whether Gamboa and Garcia were borrowed servants creates questions of fact precluding summary judgment
If Gamboa and Garcia were borrowed servants of LCC, then Destiny, Gamboa, and Garcia would be immune from suit under Florida's workers' compensation laws. See Gen. Crane, Inc. v. McNeal, 744 So.2d 1062, 1064 (Fla. 4th DCA 1999); Smith, 576 So.2d at 816. See generally Venezia v. Egan, 671 So.2d 175, 176 (Fla. 5th DCA 1996); Crawford v. Fla. Steel Corp., 478 So.2d 855, 858 (Fla. 1st DCA 1985). In this case, Bruno contends that the evidence supports conflicting inferences whether a contract for hire, express or implied, existed between LCC and Destiny's two employees, Gamboa and Garcia, so as to make them borrowed servants of LCC. We agree.
*842 There is a presumption that when an employer lends its employees to a special employer, the employees continue in the employment with the general employer  here, Destiny.[2]See Shelby Mut. Ins. Co. v. Aetna Ins. Co., 246 So.2d 98, 101 (Fla.1971) (relying on 1A Larson, Workmen's Compensation § 48.10 (1967)). However, this presumption can be overcome if the employees are borrowed servants of the special employer. The courts have created a three-pronged test to determine whether an employee has become a borrowed servant of the special employer:
(1) whether or not a contract for hire, express or implied, exists between the employee and the alleged special employer; (2) whether or not the work being done at the time of the injury was essentially that of the alleged special employer; and (3) whether or not the power to control the details of [the] work being done at the time of the accident resided in the alleged special employer.
Id. at 101 n. 5 (citations omitted). See also Horn v. Tandem Health Care of Fla., Inc., 862 So.2d 938, 940 (Fla. 2d DCA 2004); Gen. Crane, Inc., 744 So.2d at 1064; Venezia, 671 So.2d at 177; Crawford, 478 So.2d at 859.
The first prong  evidence of a contract between the special employer and the employee  is the most important factor and may be proven either expressly or by implication. See Shelby, 246 So.2d at 101 n. 5. The other two factors are merely indicia of the first factor. See id. (citing reference omitted). "The evidence of a contract creating a special employment [relationship] must amount to a `clear demonstration' of a `deliberate and informed consent' by the employee" because the employee loses the right to sue the special employer for negligence. Horn, 862 So.2d at 940 (relying on Shelby, 246 So.2d at 101). That consent can be implied by factors such as benefit, right of control, and compensation. See Shelby, 246 So.2d at 101.
Here, the only document that could arguably be asserted as a written contract is the invoice between LCC and JDH.[3] The invoice reflects such information as the date of service, the location, the amount of time billed, the amount pumped, the price, and the employee initials for one of the appellees (presumably Garcia). Destiny and Gamboa are not mentioned. Nothing in the invoice describes the details of the work, nor does the form specify how, when, and to whom wages were to be paid. A similar document was found to be insufficient to establish an express "contract for hire" in Venezia, 671 So.2d at 178.
As in the Venezia case, even if the invoice could be construed as a contract, *843 there is no evidence that Gamboa and Garcia were aware of the details of the contract. "Such knowledge is critical to the determination" of whether Garcia and Gamboa were borrowed servants. See id.; Sagarino v. Marriott Corp., 644 So.2d 162, 165 (Fla. 4th DCA 1994) (noting employee's knowledge of definite arrangement between general and special employer must be shown); Lund v. Gen. Crane Inc., 638 So.2d 146, 147 (Fla. 4th DCA 1994) (same); Smith, 576 So.2d at 818 (same). Further, the undisputed testimony presented at the hearing was that there was no express contract between LCC and JDH on this critical issue and Destiny's own president, when asked about the terms of the agreement on who controls employees, testified that JDH would be in charge of its own people. Accordingly, the evidence was sufficiently debatable that the elements of control were not expressly defined and, perhaps most important to our analysis here, the record evidence did not amount to a "clear demonstration" of a "deliberate and informed consent" to an employment relationship with LCC by Garcia and Gamboa. See Horn, 862 So.2d at 940.
Having concluded that there was not a sufficient basis to determine as a matter of law that an express contract for hire existed, we turn to an analysis of whether the other two prongs establish the existence of a borrowed servant status.
The second prong  whether Gamboa and Garcia were performing the work of LCC  is not at issue. Therefore, no further analysis is required on the second prong of the test.
As to the third prong of the test  whether LCC had the power to control the details of the work being done by Gamboa and Garcia  the competing facts and inferences in this case fall far short of overcoming the presumption of continued employment by Destiny, see Shelby, 246 So.2d at 101, and establishing a sufficient basis for summary judgment. The testimony established that LCC, JDH, and Destiny treated Gamboa and Garcia as Destiny's employees and that Gamboa and Garcia were paid by Destiny. LCC's president testified that if he was dissatisfied with Gamboa's and Garcia's work, he could tell JDH not to send them to the site but he did not have authority to fire them. As to his control over their work, LCC's president said that the pump operators "don't really work for me. They work for the pump so they can do whatever they want."
Further, it makes sense in this case that there would be continued general employment because Destiny or JDH would want to protect its equipment by sending along employees who have knowledge of the equipment and know how to use and maintain it properly. See Venezia, 671 So.2d at 177-78.
Arguably, two related factors weigh in favor of Gamboa's and Garcia's borrowed servant status in regard to the control prong. One factor is that Gamboa testified LCC was his boss on the day of the construction because he did whatever LCC would direct him to do. The second factor is that LCC's employees would sometimes tell the pump operators where to set up the pump and when to turn the pump on and off. However, neither of these factors establishes as a matter of law that LCC maintained a sufficient amount of control over Gamboa and Garcia to render them borrowed servants.[4] This is especially *844 true for purposes of summary judgment because Destiny's own president testified in deposition that it was JDH that directed Gamboa's work at the job site and JDH that remained in control of its employees. Likewise, the LCC foreman on the job testified that most of the time the pump operators knew when, where, and how to set up and exactly what to do. In fact, the foreman testified that it was the pump operators who would tell LCC employees where to move the hose. Hence, it would be up to Gamboa and Garcia, unsupervised by LCC, to safely operate the pump, to lay out the hose, and to make sure the hose was not kinked, which, according to the record, is a potential source of pressure release.
In addition, Gamboa, like Garcia, acknowledged that he was working for JDH on the day of the accident. While the evidence established that LCC employees could tell the pump operators where to set up, the evidence also revealed that the pump operators would typically just arrive and begin setting up on their own. Notably, Gamboa testified that he was instructed by JDH employees, not LCC employees, on how to safely operate the pump. Thus the issue of what was understood between Gamboa and Garcia and their general and special employers on the matter of control in this case is far from crystallized in the testimony.
The determination of whether Gamboa and Garcia were subject to the allegiance and control of their special employer, LCC, or their general employer, Destiny, is necessarily a question of fact. See Sherrill, 656 So.2d at 185 (citing Restatement (Second) of Agency § 227, cmt. a (1958)). The conflicting inferences from the record about intent or understanding are best left for the jury and not appropriate for summary judgment. Pancoast v. Pancoast, 97 So.2d 875, 876 (Fla. 2d DCA 1957); Owens v. MacKenzie, 103 So.2d 677, 679 (Fla. 1st DCA 1958). Moreover, LCC's occasional directions about where to set up the pump and LCC's employees' role in notifying Gamboa and Garcia when to turn the pump on and off are insufficient to prove control by LCC. See Gen. Crane, Inc., 744 So.2d at 1065; cf. Larzelere v. Employers Ins. of Wausau, 613 So.2d 510, 510 (Fla. 2d DCA 1993) (finding leased crane operator to be borrowed servant because he was being directed in operating the crane by hand signals from employees of special employer).
Due to the conflicting inferences, summary judgment was inappropriately entered. See Horn, 862 So.2d at 940-41; Gen. Crane, Inc., 744 So.2d at 1065; Venezia, 671 So.2d at 178; Sherrill, 656 So.2d at 185-86; Crawford, 478 So.2d at 860-61. The fact-finder should make the borrowed servant determination. See Sherrill, 656 So.2d at 186.
Based on the foregoing, we conclude that appellees' showing was insufficient, as a matter of law, to establish the borrowed servant status of Gamboa and Garcia so as to make Destiny, Gamboa, and Garcia statutorily immune from suit under Florida's workers' compensation law.
Reversed and remanded.
KELLY and WALLACE, JJ., Concur.
NOTES
[1] JDH was apparently never served with a copy of the summons and complaint, and although the case style of the trial court order lists JDH as a party, the body of the order does not. Consequently, JDH is not a party to this appeal.
[2] In cases like this, terminology can be confusing. We previously referred to LCC as general contractor and Destiny as subcontractor, because statutory language and cases that analyze the foregoing statutory immunity issues use such terminology. Cases addressing common law borrowed servant issues, on the other hand, employ different labels for the participants. Most often the entity in the position of LCC is referred to as the "special employer" and the entity in Destiny's position is the "general employer." In our discussion of the borrowed servant principle in this case, general employer does not mean general contractor. Focusing on the label rather than the substance of the relationship can cause confusion. It is the actual status of the entity and not the label given to the entity that is determinative.
[3] Although appellees' counsel appeared to focus at the hearing below on whether there was a contract between LCC and JDH, that is not the ultimate question before this court. Rather, the issue pertains to whether the terms of the employment arrangement made Gamboa and Garcia knowing special employees of LCC. See Venezia, 671 So.2d at 178.
[4] At the summary judgment hearing, appellees' counsel told the trial court that the depositions show that LCC exclusively controlled Gamboa and Garcia and that the "most important" factor here is direction on when to turn the pump on and off, presumably because failure to turn the pump off caused the injury. At best, this characterization of the evidence relies on an inference regarding the scope of negligent activity and the role of the participants rather than an undisputed fact. Our review of the scope of alleged negligence in the complaint as well as contradictory testimony and competing inferences leads to our view that this issue is clearly a determination for the jury.